Filed January 31, 1896.

No. 17,217.

REYNOLDS ET AL. *v.* LOUISVILLE, NEW ALBANY AND CHICAGO RAILWAY CO. ET AL.

EVIDENCE.—*Application of Rentals on Railroad Lease.—Construction Contract.*—Oral evidence is inadmissible to show that rentals on a railroad lease are to be applied upon a construction contract, so as to impose on the lessee a new burden in addition to the payment of the agreed rent when the road is completed and accepted, which is all that the lease calls for.

ACTION.—*Parties in Interest.— Beneficiaries.*—Only beneficiaries and real parties in interest, and not those who merely anticipate benefit from the promise, are within the rule permitting an action on a contract by a third person for whose benefit it was made.
(See note at end of opinion.)

SAME.—*Assignment of Instrument as Collateral Security.—Suit on by Assignor.*—An absolute assignment of a contract as collateral security prevents the assignor from maintaining an action upon it on his own account, even after notice to the assignee to institute the action.

CONTRACT.—*To Build Railroad.—Separate Contracts Not Part of Same Transaction.*—A person who contracts to build a railroad cannot claim that a lease made by the owner with another company, which is not on its face connected with its contract, forms a

part of the same transaction so as to establish contract relations between him and the lessee.

SAME.—*Construction of Railroad.—Payment.*—Delivery of bonds in payment for the construction of a section of a railroad, under an agreement requiring full compensation for such portion as soon as it is completed, extinguishes the contract as to that part.

SAME.—*Obligation.—Breach.*—Without obligation, there can be no actionable breach of contract.

From the Putnam Circuit Court.

*F. M. Trissal, D. E. Williamson* and *W. R. Fertig,* for appellants.

*F. C. Field, G. W. Kretzinger, C. C. Matson, Orsborn & Lynde* and *W. P. Kappes,* for appellees.

McCABE, C. J.—This appeal is from a judgment in favor of the appellee, The Louisville, New Albany and Chicago Railway Company, on its separate demurrer to the appellants' complaint, and in favor of the other appellees, Porter Skinner and The Fort Wayne, Terre Haute and Southwestern Railroad Company upon motions made by them to quash the process. The principal error alleged and discussed is that the circuit court erred in sustaining the demurrer to the several paragraphs of the complaint alleging insufficiency of the facts. Four paragraphs of complaint were filed, but the second was dismissed by the appellant. In the first paragraph it is averred, substantially, that the appellants, Benjamin Reynolds, John H. Reynolds and Elisha P. Reynolds, Senior, were co-partners, engaged in the business of building railroads, under the firm name of E. P. Reynolds & Co.; that in September, 1892, Elisha P. Reynolds, Senior, departed this life, testate, leaving a last will and testament, naming Elisha P. Reynolds, Jr., as executor, in which capacity he is now acting, and, as such, represents the interests of said testator's

estate, and the other appellants are surviving members of said firm; that the Louisville, New Albany and Chicago Railway Company is now, and at all the times mentioned in the complaint was, a railroad corporation organized and existing under the laws of the State of Indiana; that it was reorganized in 1872, under and pursuant to the provisions of sections 3946, 3948, 3949, 3950 and 3951, of the Revised Statutes of Indiana, being an act of the General Assembly of March 3, 1865, entitled, etc.; that the Fort Wayne, Terre Haute and Southwestern Railroad Company, on and for some time prior to the third day of December, 1890, was a corporation created under the laws of the State of Indiana, for the purpose of constructing, owning and operating a line of railway between a point of intersection with the railway of the Louisville, New Albany and Chicago Railway, at or near the town of Bainbridge, in the county of Putnam, and a point at or near the town of Carbon, in the county of Clay, a distance of thirty-three miles, but had no assets nor capital or credit whatever to enable it to build its said contemplated road, but had entered into certain negotiations with the defendant, The Louisville, New Albany and Chicago Railway Company, to provide the means by which the same might be built and operated by and for the use and benefit of said Louisville, New Albany and Chicago Railway Company, to the end that the latter might acquire great advantages and benefits by increased traffic from the shipment of coal and stone over its railways, and by enabling it to secure a sufficient and continual supply of fuel for the use of its railways at low cost, from the large coal fields in the counties of Clay and Parke, along the line of said contemplated railroad, and adjacent to the road of said Louisville, New Albany and Chicago Railway Company; that said negotiations

had, at the date last aforesaid, so far progressed as that said two corporations had agreed upon the terms and stipulations that should be set forth in writings thereafter to be drawn, expressing their intentions and purposes, and it was then agreed between them that preliminary to the preparation of said written agreements, said Fort Wayne, Terre Haute and Southwestern Railroad Company should first award the contract for the building of said line of road, and that to induce the party to whom the contract was awarded to undertake the work of building the road, provisions for securing payment should afterwards be stipulated for and expressed in said written agreement between said corporations so to be subsequently drawn, and said defendant, the Louisville, New Albany and Chicago Railway Company, should be thereby obligated and bound to pay an amount equal to the interest at five per cent. per annum, payable semi-annually, upon certain first mortgage bonds, to be issued by said Fort Wayne, Terre Haute and Southwestern Railway Company, also a sum in addition to said interest each year, beginning five years after the date of December 19, 1890, which, in the aggregate, with accrued interest, should equal an amount sufficient to pay the principal of said bonds at maturity, and that the covenant to pay said sums should be endorsed upon said bonds and be taken and deemed to run in favor of the holders thereof; that thereupon, in pursuance of said agreement, the contract for constructing said railroad was awarded to said firm of E. P. Reynolds & Co., said preliminary construction contract being in writing in two parts and a copy thereof being filed with and made a part of the complaint identified as "Exhibit A"; that by the terms of said preliminary construction contract there was to be paid to said firm for the construction of

said road $25,000.00 per mile in said corporate bonds to be issued and secured by a first mortgage upon said railroad, bearing interest at the rate of five per cent. per annum, payable semi-annually, in the amount of $25,000.00 per mile, said bonds to mature fifty years after the date thereof and to be payable in .gold ; that afterward, to-wit, on the 19th day of December, 1890, said agreement previously contemplated between said two corporations was duly executed and a copy thereof is filed with and made a part of the complaint marked "Exhibit B"; that afterwards, to-wit, on the 15th day of January, 1891, in pursuance and in further consummation of the previous agreements aforesaid, another written agreement was entered into between said corporations which is exhibited as "Exhibit C"; that said three agreements, although bearing different dates, all relate to and are connected with each other and form parts of one and the same transaction ; that immediately after the execution of said writing of December 19, 1890, said E. P. Reynolds & Co. accepted the provisions therein made for their benefit and in good faith relying thereon and depending upon the provisions therein made for payment for said work of building said road, did, with the knowledge and consent of said New Albany Company, for its use and under the directions of its president and engineers, proceed with the work of constructing said road in accordance with the contracts aforesaid, and according to the plans and specifications furnished by said New Albany Company, relying wholly and solely, as said defendant knew, upon its obligations to endorse, guarantee and pay the bonds at the rate of $25,000.00 per mile to be issued by said Fort Wayne, Terre Haute and Southwestern Railroad Company to pay for said work, and hav-

ing, as said New Albany Company knew, no other means to rely upon for their security and payment; that if said bonds had been at any time heretofore issued, and the provisions for the payment of interest thereon, and the principal thereof made as in said obligations and contracts required, their actual and market value would, at all times hitherto, have been the par or face value thereof, but that after said firm had fully completed ten and three-fourths miles of said road, in the manner required by said New Albany Company, and by said contracts, and had actually and necessarily paid out in cash in so doing the full sum of $285,-000.00, and had done and paid for other work on the remaining part of said line, amounting to, and of the value of, $30,000.00, said New Albany Company, with full knowledge of all the facts, after it had accepted and received said ten and three-fourths miles of road, gave notice, both verbally and in writing, to said Fort Wayne Company and to said firm of E. P. Reynolds & Co., while the work was being carried on, that said work should be stopped, and that it repudiated and would not perform or carry out the provisions of said contract on its part, relating to the payment of said bonds, or the interest thereon, nor in any other respect; that up to the time of the notices aforesaid, both said Fort Wayne, Terre Haute and Southwestern Railroad Company and said firm of E. P. Reynolds & Co. had fully performed all the obligations of said contracts upon their part, and were at all times thereafter ready and willing to continue to perform the same.

It is further averred that the said firm of E. P. Reynolds & Co., relying upon said contract of December 19, and upon the recitals therein to the effect that said New Albany Company desired to secure said railroad for its

own use and operation; and that it desired to secure the right to ship stone and purchase all the coal needed for the use of its line of railroad from the mines to be operated in and upon deposits of coal along the same, were induced to, and with the knowledge of said New Albany Company did expend $89,400.00 in purchasing, leasing and developing stone quarries and coal mines along the line of said road, but in consequence of said road not being completed and operated as by said contract stipulated, they have no markets at their mines and quarries nor railroad facilities by which said stone and coal can be sold and shipped, and their expenditure of said last named sum of money has thereby been entirely lost to them. * * *

It was further averred that the writing identified as "Exhibit A" had been by their firm heretofore assigned without endorsement thereon to the appellee Porter Skinner to secure and indeminfy him against a contingent liability occasioned by his having endorsed a series of notes for them amounting to about $80,000.00; that they had requested said Skinner to institute or join them in instituting this action which he had declined to do, and they therefore make him a defendant to answer as to his interest, and the said Fort Wayne, Terre Haute and Southwestern Railroad Company is also made a party to answer as to its interest. Wherefore they ask judgment against said Louisville, New Albany and Chicago Railway Company in the sum of $780,400.00.

*Construction Contract of December 3, 1890, being "Exhibit A" filed with First Paragraph of Complaint. —Part 1st.*

"Articles of agreement made and entered into this 3d day of December, 1890, by and between E. P. Rey-

nolds & Co., of Rock Island, Illinois, parties of the first part and the Fort Wayne, Terre Haute and Southwestern Railroad Company, a corporation organized and existing under the laws of the State of Indiana, party of the second part, witnesseth:

"In consideration of the terms and conditions and the performance thereof, as hereinafter written, the parties hereto covenant and agree, each with the other, as follows, to-wit:

"The said party of the second part lets to the said parties of the first part the construction of a line of railroad from a point of intersection with the Louisville, New Albany and Chicago Railway Company at or near Bainbridge, in the State of Indiana, to a point at or near Carbon, in Clay county, State of Indiana, a distance of thirty miles more or less, upon the following terms and conditions:

"The said parties of the first part covenant and agree to build said road upon the route and grade fixed, and to furnish and pay for surveyors of said line, and also to pay for all the material and labor in and about the construction of said road according to the surveys, grades, profiles and specifications heretofore agreed upon between the parties, to be made and furnished to the said parties of the first part by the chief engineers of said party of the second part, copies of which are hereunto attached. Said road to be commenced by the said parties of the first part immediately upon the delivery to them of said surveys and specifications, and the construction thereof to a final completion shall be prosecuted promptly and without delay, so that the same may be finished at the earliest day possible.

"Now, therefore, in consideration thereof, and upon the construction of said road in the manner and as above provided, said party of the second part covenants

and agrees that it will pay said parties of the first part for the construction of said road according to the surveys and specifications so to be furnished by the chief engineer of said party of the second part, and to the entire satisfaction of the said party of the second part and said engineer, its bonds to be issued and secured by a first mortgage upon the said railroad in the usual form, and containing the usual terms and conditions of railroad mortgages, bearing interest at the rate of five per cent. per annum, payable semi-annually in the amount of $25,000.00 per mile, said bonds to mature fifty years after the date thereof, and the principal thereof payable in gold; to be issued and delivered as follows: Upon the completion of the first six miles of said road, and the acceptance thereof by said engineer of said second party the second party agrees to issue upon said six miles of road its bonds in the amount aforesaid, and to deliver the same to said parties of the first part, and to do likewise upon the completion of each succeeding six miles until the said road is completed between its said intersection with the Louisville, New Albany and Chicago Railway to a point at or near Carbon aforesaid. And upon the completion of said railroad between said points, to issue and deliver to said parties of the first part in further and final payment, its capital stock as full paid, upon the line of said road so to be constructed by said first parties aforesaid, in the amount of $20,000.00 per mile, which stock and bonds said parties of the first part hereby covenant and agree to accept in full payment for their construction of said line of road as above written, and in full satisfaction for the money advanced by said parties of the first part in payment of all material and work that enter into the construction of

said road from the commencement thereof to the completion thereof.

"In witness whereof the said parties of the first part have hereunto set their hands and seals, and the said party of the second part has caused these presents to be signed by its president and attested by its secretary with its corporate seal to be hereunto attached, the day and year first above written.

"Interlineations between the 23d and 24th lines and 24th and 25th lines on page one, and between the 12th and 13th lines and the 24th and 25th lines on page two, were made before execution.

"(Signed)    E. P. REYNOLDS & CO.    [SEAL.]

"FORT WAYNE, TERRE HAUTE & SOUTHWESTERN RAIL-
    [SEAL.]    WAY COMPANY,

"Attest:    By GEO. O. MANCHESTER,
    B. L. COOK, Secretary.    President."

## SECOND PART OF EX. A.

*Part 2d of Construction Contract of December 3d, Filed with First Paragraph of Complaint, omitting Formal Part at Beginning, is as follows:*

"Whereas, the parties hereto did heretofore enter into a contract for the construction and completion, by said parties of the first part, of a line of railroad for the said second party, the parties of the first part to furnish and advance the money to pay therefor, and the said second party to pay said first party therefor in its bonds and capital stock upon said line of road so to be constructed and completed as aforesaid, according to the terms and conditions of said construction contract to which reference is here made.    And,

"WHEREAS, it has been agreed by and between said party of the second part and The Louisville,

New Albany and Chicago Railway Company, that on or before the completion of said railroad between its intersection with the said railway of said Louisville, New Albany and Chicago Railway, at or near Bainbridge, and a point at or near Carbon, Clay county, Indiana, the said railroad shall be leased to said Louisville, New Albany and Chicago Railway Company and be thereafter managed and operated by that company at an annual rental equal to the annual interest upon the first mortgage bonds of said parties of the first part, and in addition the payment of annual installments to a sinking fund to meet the principal of said bonds at maturity.   And,

"Whereas, said Louisville, New Albany and Chicago Railway Company demand, as a consideration for so leasing and operating said railroad, fifty-five per cent. of the capital stock to be issued upon said line so to be constructed as aforesaid, which said party of the second part is willing to deliver.

"Now, therefore, said parties of the first part, in consideration thereof, and in further consideration of the said benefits that will come to them from said lease, and the rental secured thereby to meet the interest and principal of said bonds, hereby assigns and sets over to the said Louisville, New Albany and Chicago Railway Company their right, title and interest in, and to fifty-five per cent. of said capital stock as full paid, and hereby authorize the said party of the second part to deliver said fifty-five per cent. of said capital stock upon its issue, as the same is issued according to the terms of the said construction contract, to the said Louisville, New Albany and Chicago Railway Company. And in consideration thereof, the said party of the second part agrees that it will arrange with said Louisville, New Albany and Chicago Railway Company for

said lease, and the rental thereby secured and thereunder to be paid, and will issue and deliver fifty-five per cent. of the said capital stock so belonging to the said parties of the first part to the said Louisville, New Albany and Chicago Railway Company as herein provided. In case the said Louisville, New Albany and Chicago Railway Company should insist, as a condition of said lease, that the route and construction of said road should be made and done to the satisfaction of the president, general manager or chief engineer of said Louisville, New Albany and Chicago Railway Company before accepting and executing said lease, then, and in that case, said parties of the first part hereby expressly authorize said party of the second part in the name of the parties of the first part to so agree, and said parties of the first part hereby covenant and agree to abide thereby and conform thereto."

Signed, &c.

*Contract of December 19, 1890, Between L., N. A. & C. R. W. Co., and Ft. W., T. H. & S. W.—Exhibit "B," Filed with First Paragraph of Complaint.*

## "ARTICLES OF AGREEMENT,

"Made and entered this 19th day of December, A. D. 1890, by and between the Louisville, New Albany and Chicago Railway Company, party of the first part, and the Fort Wayne, Terre Haute and Southwestern Railroad Company, party of the second part,

### "WITNESSETH:

"Whereas, there are certain large coal fields and building stone deposits in the counties of Clay and Parke, in the State of Indiana, and development and

working of which are prevented for the want of railroad facilities; and,

"Whereas, it is believed if a railroad is built thereto, said deposits of building stone and coal will furnish a sufficient volume of business and freight to make said road a paying investment, and will also be of great advantage and benefit to said party of the first part, both by the increased traffic from the shipment of coal and stone over its railway, and by enabling it to secure a sufficient and continual supply of fuel for use on said railway at a low cost; and,

"Whereas, said party of the second part proposes to build a railroad between a point of intersection with the railway of said party of the first part at or near Bainbridge, in the county of Putnam, and to a point at or near Carbon, in the county of Clay, Indiana, so as to reach said coal and stone deposits and to pay for the construction of said railroad in its bonds issued thereon; and,

"Whereas, said party of the first part desires to secure said railroad for its own use and operation by lease thereby to secure the exclusive shipment by its railway of the coal and stone from said deposits when opened; and,

"Whereas, said party of the first part proposes and offers to pay as and for rentals upon said lease a sum equal to the interest upon said bonds as the same becomes due and payable, and also after five years, a further annual sum sufficient to provide for the payment of the principal at the maturity thereof, by a sinking fund, as hereinafter provided; and,

"Whereas, said party of the first part desires to secure the right to purchase all the coal needed for the use of its lines of railroad from the mines to be opened in and upon said deposits of coal; and,

"Whereas, said party of the second part is willing to lease its said railroad to said party of the first part upon the conditions and terms hereinafter set forth; and,

"Whereas, The parties hereto propose to make and execute this contract as preliminary to the making and execution of said lease, and for the further purpose of better defining and fixing the rights of the parties hereto in the premises:

"Now, therefore, in consideration of the premises, and of the covenants and agreements to be performed by the parties hereto, each with the other as herein written, said second party covenants and agrees that it will construct and complete said railroad for the use and operation of said first party under said lease in accordance with the specifications approved by the president, general manager or chief engineer of said party of the first part, a copy of which specifications are hereto attached, marked 'Exhibit A.'

"Said second party further covenants and agrees that it will execute and deliver to said first party a lease for said railroad, which said lease said party of the first part hereby covenants and agrees to execute, accept and perform, said lease to be in writing, for the term of fifty years and to contain, among other things the following conditions and covenants:

"First. That as and for a part of the rental for said railroad, said first party, as lessee, shall pay to the trustee named in the first mortgage of said party of the second part to be made to secure said bonds, an amount equal to the interest at five per cent. per annum upon the first mortgage bonds of said party of the second part, at the rate of $25,000.00 per mile of completed road; such payments shall be made in semi-annual installments equal to the semi-annual install-

ments of interest on said bonds, and shall become payable one day before said interest becomes due. Said payments shall continue until the whole amount of principal and interest of said first mortgage bonds shall have been paid and said bonds canceled, when said payments shall cease. And said party of the first part shall also pay in addition to the above mentioned rental, a sum each year, beginning five years from date hereof, which, in the aggregate, with accrued interest, shall equal an amount sufficient to pay the principal of said bonds at maturity, but such sums shall be invested from time to time in purchasing said bonds at 105 or less, and such bonds shall be issued subject to the right of trustee to draw at 105 a sufficient number to absorb the amount paid under this clause, and such payments shall continue until the amount of such fund shall equal the amount of the principal of said bonds, when such payments to said trustee for the purpose of such fund shall cease. It being the intention of the parties hereto that the said rentals shall become due and shall be paid by said first party to said trustee, in a sufficient amount and in ample time, to meet and pay said interest upon said first mortgage bonds at the date of the maturity thereof, and to pay, by the creation and maintenance of said sinking fund, the principal of said bonds at maturity thereof.

"Second. That said party of the first part will, at all times during the continuance of said lease, maintain, manage, use and operate and keep in good order, condition and repair at its own expense, the entire line of said demised railroad, and all fixtures and appurtenances thereof, and keep the same fully supplied with motive power and equipment, so that the traffic and

business of said railroad shall be encouraged, developed and handled promptly.

"Third.    That said first party as such lessee will pay or cause to be paid during the term of said lease all damages claimed, or that may be obtained by any person or persons whomsoever, or by the public for injury to person or property, real or personal, that may occur upon the line of said railroad, or to the property abutting the same, during the continuance of said lease, and that said first party as such lessee will hold said second party free and harmless therefrom.

"Fourth.    That said first party as such lessee will also pay all taxes, assessments and other public charges upon said railroad during the term of said lease.

"Fifth.    That said first party as such lessee will save said second party as lessor in said lease harmless and free from all charges, debts or liabilities that may occur, arise from or be caused by the operation and maintenance of said railroad of any nature or kind whatsoever.

"Sixth.    That the lease shall contain all other, further and different covenants and agreements and conditions that are usual in railroad leases, which do not contradict the special provisions and covenants herein recited and provided to be written in said lease.    It being expressly covenanted and agreed by and between the parties hereto that this covenant for payment of rentals in the manner and for the purposes aforesaid shall become binding upon said first party from and after the date said first party begins to operate said completed railroad.

"Seventh.    That said covenant of said first party to pay said rentals, in the manner and for the purposes aforesaid, to be written in said lease, shall be submitted to said trustee of said mortgage, securing said first

mortgage bonds, and said covenant shall be written in said lease, in form satisfactory to said trustee, and shall be endorsed upon said bonds, and this covenant shall be taken and deemed to run in favor of the holders of said bonds, all of which shall be fully expressed and provided in said lease.

"Eighth.   The parties hereto further covenant and agree that said lease shall be executed and delivered by said second party to said first party, before the construction of said railroad, and that upon its entire completion according to specifications, and upon said first party being put in possession thereof, said lease shall be taken and deemed to attach to and cover said railroad from that date, and to control and hold the same for and on behalf of the lessee therein, without let or hindrance from said second party, as the lessor therein.

"And in consideration thereof, said party of the second part agrees that it will, upon the completion of said railroad, issue its capital stock to the amount of twenty thousand dollars per mile of completed road, and deliver the entire issue thereof to said party of the first part ; and said party of the second part also agrees to procure the immediate opening and development of quarries and coal mines in and upon the stone and coal deposits hereinbefore mentioned, and thereby provide immediate business for the said railroad.

"And the said party of the second part also agrees to procure the execution of contracts by the parties opening stone quarries and coal mines upon said land, by which such parties will agree as far as they can legally control the same, that shipments of the products of such stone quarries and coal mines destined to points on or reached over the railway of the party of the first part shall be made exclusively over said railway, provided that neces-

sary facilities are supplied, and rates are not in excess of those offered by other railroads.

"And said party of the second part also agrees to save and hold free the party of the first part from all liabilities or damages of any kind whatsoever, arising from, through or out of the right of way or construction account of said party of second part.

"And said party of the second part further agrees to procure from the parties opening and operating coal mines on said land, contracts securing to said party of the first part the right to purchase and take from said coal mines, at a price to be agreed upon, all the coal required by said party of the first part for use upon its line of railway to the extent of the product of said mines.

"In witness whereof the parties hereto have caused these presents to be signed by their respective presidents, and attested by their respective secretaries, with the corporate seals of each to be hereunto affixed the day and year above written.

(Signed and sealed.)

"Louisville, New Albany & Chicago Railway Co.
                    By Wm. L. Breyfogle, President.

"Attested :   J. A. Hilton, Secretary.

"Ft. Wayne, Terre Haute & Southwestern R. R. Co.
                    By Geo. O. Manchester, President.

"Attested :   B. L. Cook, Secretary."

"Exhibit C" is too long to be copied into this opinion, but so much of it as incidentally affects the question involved will be alluded to further on.

### The Third Paragraph of the Complaint

Avers in substance, that on the 4th day of October,

1890, certain persons associated themselves together in written articles of incorporation, which were then filed in the office of the secretary of State of the State of Indiana, pursuant to the laws of Indiana governing the incorporation of railroad companies, under the corporate name of "The Fort Wayne, Terre Haute and South-western Railroad Company;" and they therein declared it to be the purpose of said corporation to construct, own, operate and maintain a railroad to run from the city of Fort Wayne, Allen county, Indiana, in a south-westerly direction to a point on the west State line of Indiana, in the county of Vigo, Indiana, near to and west of the city of Terre Haute, with a branch from Bridgton on its main line, in the county of Parke, to Brazil, in the county of Clay, in said State, but said corporation did not then nor has it ever had any capital, credit or means whatever to enable it to build any railroad, and has at all times been insolvent.

That said defendant, the Louisville, New Albany and Chicago Railway Company, at a meeting of its directors, duly called and held on the 28th day of October, 1890, and at a meeting of its stockholders duly called and held on the 29th day of October, 1890, authorized its directors to enter into, and in its corporate name to execute, a contract or contracts to carry into effect certain resolutions which were on said days duly entered upon the corporate records of said stockholders and directors, and expressed in these words, to-wit:

"Whereas, this corporation has express power under the laws of Indiana to extend its road and locate and construct branch and extension lines of railroad by purchase, lease, or consolidation; and,

"Whereas, it is thought necessary and desirable for this company, in order to develop its traffic, strengthen its system and increase its revenues, to obtain, secure

and control, through construction, lease, purchase or consolidation, two lines of railroad, one * * * connecting this company's railroad with the coal fields of Parke, Clay and other counties, which extensions will, it is believed, greatly increase the earnings of the existing line of our road :

"Therefore, resolved, The board of directors are hereby fully authorized to negotiate, conclude, execute and deliver, in the name of this company, all such contracts and agreements which, under the laws of Indiana, it may be lawful for it to execute, the object of which is to secure the location, construction and control of either or both of said lines of extension, or branch roads hereby authorized and approved, meaning to invest full and discretionary power in said board of directors, to enter into any and all lawful and proper contracts to construct or secure the building, and thereafter the ownership, lease, consolidation or control of either or both of such lines of road, or if either of such plans can be accomplished by the purchase of any road constructed, or being constructed by another corporation, the said board may purchase such other road from such other corporation, on such terms as can be agreed on and as may be authorized by law: Provided, however, That no bonds of this company shall be issued in payment for any such road so purchased in excess of $25,000 of five per cent. bonds per mile, under the limitations and provisions of the existing trust deed of this company to the Central Trust Company of New York and John Stotsenburg."

That after the adopting and entering of said resolution on said corporate records, to-wit, on the 3d day of December, 1890, said defendant, the Fort Wayne, Terre Haute and Southwestern Railroad Company, entered into a construction contract with E. P. Reynolds & Co.,

which is set forth, and are the same as the first part of the contract exhibited in the first paragraph of the complaint as "Exhibit A."

That although said writings are in form a complete contract, it was agreed at the same time between the parties thereto, nevertheless, that it was not to become a binding contract, and that performance of its provisions should not be entered upon by said E. P. Reynolds & Co. until a certain contract relating to the construction and operation of the part of said railroad, so to be built by said Reynolds & Co., should be entered into between said Fort Wayne, Terre Haute and Southwestern Railroad Company and the Louisville, New Albany and Chicago Railway Company, relating to and providing for the building of the same identical line of railroad, for the use and to be operated by said Louisville, New Albany and Chicago Railway Company.

And it was at the same time further agreed that a supplemental contract should be entered into between said E. P. Reynolds & Co. and said Fort Wayne, Terre Haute and Southwestern Railroad Company, which said supplemental contract should be made so as to conform to and to bind said Reynolds & Co. to the performance in the building of said railroad, to the contract so to be entered into between said two railroad companies, and so as to give to said Reynolds & Co. the aid and benefits that would come from the covenants and provisions to be therein made providing for the payment of the interest upon and principal of the corporate bonds mentioned in the said construction contract above set forth.

And on the same day (December 3, 1890,) said Fort Wayne, Terre Haute and Southwestern Railroad Company and said E. P. Reynolds & Co. signed a certain other writing, in and by which they undertook and

attempted to have stated the terms and provisions that they mutually understood had been agreed upon between said two railroad companies, and which they intended should be also embraced in the contract between said E. P. Reynolds & Co. and the said Fort Wayne Company, a copy of which writing so signed is exhibited herein as "Exhibit B," being the second part of the contract exhibited as 'A' in the first paragraph of the complaint, but nevertheless to provide against any mistake in their said mutual understanding, and to the end that if any mistakes should, upon comparison with said contract to be entered into between said two railroad companies, be found to exist, or if it should be required that any change or modification should be necessary to bring about such conformity, it was further agreed that such corrections or modifications should be made, and, in order that they might be so made, it was further mutually agreed that the said second or supplemental writing of December 3d should be taken from the place where it was signed in Chicago, Illinois, to New York, where said contract between the two railroad corporations was to be executed and be taken by an agent and representative of said Fort Wayne Company mutually agreed upon, and who was to be and was intrusted and authorized by both parties to make such corrections, changes and modifications in said writing, if any should be found necessary; that in accordance with such agreements and authority, said agent of the Fort Wayne, Terre Haute and Southwestern Railroad Company took said writing to the city of New York for the purpose above stated, and on the 19th day of December, 1890, said two railroad corporations executed the said contract, a copy of which is filed herewith, and made a part hereof, marked "Exhibit C", being the same as "Exhibit B", filed with the first

paragraph, and upon its execution said agent before mentioned undertook to make such necessary changes, additions and corrections, and represented to the said firm of E. P. Reynolds & Co. that he had made the same, but the plaintiffs are unable to exhibit a copy of said corrected supplemental contract, because the same has been lost.

They further aver that it was mutually understood, intended and agreed, by and between said Louisville, New Albany and Chicago Railway Co., the Fort Wayne Company and appellants, on said 3d day of December, 1890, that if said supplemental contract with E. P. Reynolds & Co., did not, in apt terms of expression, conform to and embody the provisions of said contract of December 19th, that then the latter (the contract of December 19th) should be accepted, adopted, acted upon, and performed by E. P. Reynolds & Co., in all matters relating to the construction of said railroad, the delivery of its entire capital stock, the acquisition, opening and developing of coal mines and stone quarries, and the procuring of contracts for shipping freight and the purchase of coal, as fully as if the names of E. P. Reynolds & Co. had been inserted and substituted in place of the names of said Fort Wayne, Terre Haute and Southwestern Railroad Company, and in consideration thereof, that the said Louisville, New Albany and Chicago Railway Company's covenant to endorse the bonds in said contracts mentioned should run to, and all the benefits thereof should inure to, and be held by, said E. P. Reynolds & Co.; that in accordance with such mutual agreements, understandings and intentions, there was immediately, upon the execution of said contract of December 19th, furnished and delivered by said New Albany Company, and accepted by said E. P. Reynolds & Co., a trip-

licate original copy of the said contract of December 19th, with the plans, specifications and surveys for said road, prepared by the chief engineer of said New Albany Company, and said Reynolds & Co. proceeded under said contract and surveys and specifications, and under the direct supervision, and with the approval and full knowledge of said New Albany Company, with the performance of said work, and with the performance of said contracts in all the matters and things relating to the building of said road, the acquisition of stone and coal lands, the opening and development of stone quarries and coal mines, and the procurement of contracts for shipping coal and stone, and the purchase of coal for the use and benefit of said New Albany Company; that during the time intervening between December 3d and December 19th, as said New Albany Company well knew, said firm had, in performing preliminary acts and work necessary in the performance of said contract, expended large sums of money for the use and benefit of said New Albany Company, and it was mutually intended, and was agreed by all the parties that when said contract of December 19th should be signed, that its provisions should relate back to December 3d, and it was an essential part of the consideration and inducement of said New Albany Company that it should get the stock of the Fort Wayne Company through Reynolds & Co., also that its said contract should so relate back and that it should, by its relating back, get the benefit of the expenditures that had been so made by said firm.

They further aver that part of the same enterprise, undertaking and purposes in the building of said road, and part of the prominent inducements and considerations for the covenants and agreements of said New Albany Company, was the securing by it of future shipments of stone and coal, and the purchase at low cost,

of fuel for its own use in the operation of its railways, and as a further means of inducing E. P. Reynolds & Co. to enter into said contracts and to make expenditures of money in entering upon the performance, and continuing to perform the same, the said Louisville, New Albany and Chicago Railway Company, simultaneously with said contract of December 19th, entered into two certain other contracts, one with the Parke County Brown Stone Company and the said Fort Wayne Railroad Company, and the other with said Fort Wayne Company, and the Monon Block Coal Company, copies of each of which are exhibited herewith marked as "Exhibits D" and "E", both of which contracts were entered into as a part of the same general plan and purpose, and for the purpose of making effectual and beneficial to said New Albany Company, its said contract of December 19th; that, in fact, said Parke County Brown Stone Company and said Monon Block Coal Company were both corporations that had been organized by E. P. Reynolds & Co., and they were the owners of all the stock and property thereof, and with the co-operation and concurrence of the New Albany Company they caused such corporations to be formed, and caused said contracts "D" and "E" to be entered into as part of the means of performing and carrying out the contracts for the construction of said road, and of procuring for shipment over it of stone and coal, and of enabling said New Albany Company to obtain coal at low cost for its use, it being also the intent by said contracts as therein expressed "to secure harmonious action of the parties for the common interest and advantage of all, and it is agreed (therein) that if there shall be any doubt as to the meaning of any part thereof it shall be interpreted in accordance with that intent.

They further aver that said New Albany Company

at all times knew that said Fort Wayne Company had no means or ability whatever to build said road, or to do anything else requiring the expenditure of money, and said Fort Wayne Company never organized or entered upon said enterprise except for the use and benefit of said New Albany Company; that said Louisville, New Albany and Chicago Railway Company, in the manner hereinafter shown, repudiated said contract of December 19, 1890, and the so-called lease of January 15, 1891, a copy of which is filed with the first paragraph of the complaint as "Exhibit C", and all its other contracts aforesaid, while the same were being performed and carried out by E. P. Reynolds & Co. long before it had become entitled to any of said stock of said Fort Wayne, Terre Haute and Southwestern Railroad Company under its said contracts, and such repudiation was not because either said Fort Wayne Company, under its said contracts, or said E. P. Reynolds & Co. had become disabled from delivering to it said entire issue of stock, nor because of any non-compliance with or violation of any of said contracts by the other parties thereto.

They further aver that said New Albany Company at all times treated E. P. Reynolds & Co. as the substitutes of said Fort Wayne Company in the matter of constructing and building said road, and in all the matters relating to the securing of contracts for freight and coal, and in opening and developing coal mines and stone quarries as in said contract between said two companies provided and dealt with said E. P. Reynolds & Co., and with no one else, in all matters pertaining thereto, and not only directed and required them to construct said road in accordance with the plans and specifications it had prepared, but furnished them with cars, equipments, supplies and tools, and approved,

directed and accepted the work as it was performed, and said Fort Wayne Company did no act toward construction of said road, and furnished no money or assistance in paying for the same, and has never been able to do so.

They further aver that they were induced, not only to perform all the works and acts, and to make all the expenditures herein shown, but were solicited to and induced by said Louisville, New Albany and Chicago Railway Company to enter into said construction contract with said Fort Wayne Company, and were so induced by said New Albany Company's representations and agreements, made directly to and with them, that it intended and would endorse and guarantee the payment of the construction bonds of said Fort Wayne Company at the rate of twenty-five thousand dollars per mile, and would enter into a contract binding itself to a covenant for the payment of both the principal and interest on said bonds, and would endorse such covenant on said bonds, and but for such representations, solicitations and inducements, the appellants' said firm would not have entered into said contracts or done any of the acts performed by them; that their said firm fully constructed and completed ten and three-fourths miles of said railroad, in accordance with the plans and specifications furnished by said New Albany company, and to the satisfaction of its president, general manager and chief engineer, and furnished rails, ties and materials, for two additional miles, and fully paid for all labor, material and supplies, and kept said road free from all "construction debts," and saved and held said New Albany Company free from all liabilities or damages of any kind whatsoever, arising from, through, or out of right of way or construction accounts of said Fort Wayne Company, and of E. P. Reynolds & Co., and fully paid for all

labor and material used in construction, and kept said road free from all liens for labor and material; that their said firm commenced said work about December 10, 1890, and was crowding it to completion as fast as possible without any suspensions or interruptions, and would have fully completed the same and put said Louisville, New Albany and Chicago Railway Company in full possession thereof within a reasonable time, and in as short a time as possible for any one to complete said work, but while said work was in progress, they were prevented from so doing by the act of said Louisville, New Albany and Chicago Railway Company as hereinafter shown; that in addition to the completion of said ten and three-fourths miles, and the purchase of material and supplies for two more miles, they secured the right of way and did construction work which, with the material and supplies for said two miles, was of the value of $65,000.00; that in pursuance of the provisions of the contracts hereinbefore mentioned, and in order to secure the opening and development of quarries and coal mines, and thereby provide immediate business for the said railroad, they made contracts and secured the opening of stone quarries and coal mines, procured the execution of contracts by the parties opening stone quarries and coal mines, so that shipments of the products of said mines and quarries could be made, and they also procured contracts securing to said New Albany Company the right to purchase and take from said mines all the coal required by said railway company for its own use upon its line of railway, and in so doing they in good faith necessarily expended the sum of $136,595 with the full knowledge and approval of said Louisville, New Albany and Chicago Railway Company, and for its use and

benefit, which sum has been wholly lost to them by reason of said work being stopped.

They further aver that said construction contract was entered into in contemplation of profits, that their said firm undertook to and did advance the large amount of money required to pay for the work, relying upon the value of said bonds, so to be issued, and upon receiving the same with the covenant of the Louisville, New Albany and Chicago Railway Company to endorse and pay the same, in the manner as provided in said contract for December 19th for such profits, and for reimbursement for their actual expenditures aforesaid.

And they aver that the actual and market value of said bonds with said covenant for payment endorsed thereon, and running to the holders, would, at any and all times, have been, and now would be, eighty-five per cent. of the par value thereof, and based upon such last named valuation of said bonds, the plaintiffs could, and would have received as profits for the completion of the incomplete part of said road, the sum of $200,000.

They further aver that the amount actually and necessarily paid out and expended by them in the construction and completion of said ten and three-fourths miles of road, and the value of their own labor in performing the work done, was $200,000, and they aver that while said work was in progress, and after almost the whole amounts hereinbefore stated had been expended by them, to-wit: about April 1, 1891, there was a change in the official management of the business of said Louisville, New Albany and Chicago Railway Company, and said new managers and officials, for the fraudulent, dishonest, and unconscionable purpose of depriving the plaintiffs of the benefit and advantages of the covenants that said company had agreed to endorse upon said bonds, and for the purpose of getting

the benefit of the expenditures and labor of the plaintiffs without paying therefor, undertook to and did rescind said contract of December 19th, and gave notice to the plaintiffs that it would abandon and would not perform the same, and would not in the future perform said lease and operate said road, and would not make or endorse any covenant for the payment of said bonds or interest, and repudiated all of the contracts and acts aforesaid, so entered into and done by their predecessors for and in behalf of said corporation in the manner following, to-wit:

On the 15th day of April, 1891, the president of said corporation addressed an official letter to his assistant at Chicago, Illinois, in these words:

"Dear Sir: Mr. Manchester, president of the Fort Wayne, Terre Haute and Southwestern Railroad Company, has called on me to know the course the new management will pursue in regard to his enterprise. I have stated to him that the lease was presented to the board and no action was taken. I have notified him to do nothing further with that property, based on assistance of any character from the Louisville, New Albany and Chicago Railway Company, and I further direct you to refuse to make any further examination or approval of the work or in any way involve this company further with that affair. The board will undoubtedly take action soon by appointing a committee to take it up and make a full investigation of the enterprise and the relations of the Louisville, New Albany and Chicago Railway Company to it in regard to the proposed endorsement of its bonds. Yours truly,

"SAMUEL THOMAS,
"President Louisville, New Albany and Chicago Railway Company."

That afterwards, to-wit: about April 18, 1891, said letter was exhibited to said E. P. Reynolds & Co., and they were at the same time verbally directed and ordered by officials of the defendant, the Louisville, New Albany and Chicago Railway Company, and the officials of said Fort Wayne Company, to stop work.

Afterward, to-wit: on the 7th day of May, 1891, at a meeting of the board of directors of the said Louisville, New Albany and Chicago Railway Company, the following proceedings were had, and the following resolution was adopted, to-wit:

"The president reported that he had served notice upon the parties building the Fort Wayne, Terre Haute and Southwestern railroad, that the lease heretofore signed by the former president of the company had not received the authorization of this board, and was not recognized as the act of this company. On motion, duly seconded;

"Resolved, That the action of the board of directors of this company, approving of and authorizing the president to execute the preliminary contract with the Fort Wayne, Terre Haute and Southwestern Railway Company for a lease of the road of that company, the guaranty of its bonds, and the purchase of its stock, etc., dated December 19, 1890, be and the same is hereby rescinded, and that the president of this company be and he is hereby directed to inform the Fort Wayne, Terre Haute and Southwestern Railway Company of this action, and that this company disclaims further liability thereunder or under the lease, dated January 15, 1891, and purporting to be executed on behalf of this company, by its then president, with the Fort Wayne, Terre Haute and Southwestern Railway Company."

They further aver that their said firm was also noti-

fied of the adoption of said resolution on or about May 10, 1891, and since that date, and in consequence of such acts of repudiation, and for no other cause, discontinued said work, and by reason of such repudiation have lost all the sums of money hereinbefore stated.

And they aver that the defendant, the Louisville, New Albany and Chicago Railway Company, without the consent of said E. P. Reynolds & Co., and without any cause on their part, and without any cause of the said Fort Wayne, Terre Haute and Southwestern Railway Company, or on the part of either of them, did in the manner and by the acts aforesaid, repudiate its said contracts, and disclaimed and denied all liability thereon, and refused to carry out their provisions, and has at all times since continued in such refusal and repudiation, and in consequence of the facts herein averred, the plaintiffs have sustained damages and losses by the acts of said defendant, the Louisville, New Albany and Chicago Railway Company, in the sum of $686,500.

Wherefore they ask the following relief:

1. That said contracts shall be construed and adjudged to be one contract, and, if necessary, shall be reformed, or treated as reformed, into one contract, and so as to conform to the intent and meaning of the parties thereto.

2. That the plaintiffs be found, adjudged and decreed to be subrogated to, and entitled to have and receive, all apparent rights, remedies, equities, and benefits that the said Fort Wayne, Terre Haute and Southwestern Railway Company acquired by reason of, and by virtue of, said contracts of December 19, 1890, and January 15, 1891, growing out of the covenant of said Louisville, New Albany and Chicago Railway Company to endorse said bonds and pay the interest and principal thereof,

and to all other rights or apparent rights that said Fort Wayne, Terre Haute and Southwestern Railway Company originally had, and to which the plaintiffs became entitled or substituted by reason of the facts averred in this complaint, and that they also be found, adjudged and decreed entitled to enforce in this action not only the rights and remedies to which they became subrogated, but likewise all such rights and remedies as the plaintiffs were and are entitled to themselves, independent of such rights and apparent rights and remedies to which they became subrogated.

3. That an accounting be had, and the amount that the plaintiffs are entitled to recover as damages from said Louisville, New Albany and Chicago Railway Company be ascertained and fixed, and that the plaintiffs have judgment therefor against said defendant, the Louisville, New Albany and Chicago Railway Company, in the sum of $686,565.00, together with the costs of this action.

4. And the plaintiffs ask for such other, further or different relief as they may be entitled to in the premises.

"Exhibit D" is a contract executed on December 19, 1890, by and between the Louisville, New Albany and Chicago Railway Company, first party, the Fort Wayne, Terre Haute and Southwestern Railway Company, second party, and the Parke County Brown Stone Company, third party, the substance of which is that as the first party owns a railroad, naming its terminal points, and the second party owns lands containing valuable building stone in Parke county, Indiana, the profitable development of which has hitherto been prevented by want of railroad facilities, as the second party is constructing a railroad at a point near Bainbridge, Putnam

county, Indiana, to a point near Carbon, Clay county, Indiana, connecting said point near Bainbridge with the railway of the first party, which can be conveniently located so as to reach said deposits of stone, and afford an outlet for the product thereof as may be opened; and as the second party is willing to locate and construct said road so as to reach said lands, provided said third party will open and develop quarries upon said lands, and ship the product thereof over said railroad and over the railway of the first party to such markets as are reached over said lines of said roads, and as the development of such quarries will be of great benefit to the first party from the increase of its traffic by the shipments of stone over its railway; therefore, in consideration of the premises and the promises of the parties hereto made to each other, as hereinafter set forth, it is agreed by and between said parties as follows:

The second party agrees to locate and construct its said road so that it will pass as near as practicable to the land aforesaid and the deposits of building stone thereon, and the necessary side tracks into the quarries that may be opened and operated thereon by the third party, and connect the same with said railroad, and maintain the same in good condition for the exclusive use of the third party, which are not to be extended or used for other quarries or other business without consent of said third party. And said first and second parties jointly and severally agree to furnish at all times necessary and sufficient equipment to handle and transport over their lines of railroad promptly the product of said quarries as the same are opened and developed, equal to those furnished by other first-class roads; and said first and second parties agree that the rate per ton per mile on stone shipped from said quarries to points reached by the railway of the first party shall not exceed

the rate charged to such points on stone shipped from other quarries on said railway or coming to said railway from connecting lines in competition with that from the quarries aforesaid; and also agree to aid said third party to the best of their ability to obtain such rates from their connecting roads as will insure as low rates as enjoyed by shippers of stone from other quarries to the same points. And said third party agrees with diligence to open up and develop quarries in said deposits of stone, and to continue and extend the same as rapidly as the demand for their product may require, and that the product of said quarries so far as said party can control the same shall be shipped over the railroads of said first and second parties to points reached over the railway of the first party: Provided, Said parties supply the necessary rolling stock and facilities for handling and transporting the same. It is further agreed that if at any time said first and second parties shall fail to furnish the equipment necessary for handling and transporting the product of said quarries, said third party shall have the right to supply the necessary cars subject to a charge for mileage not to exceed the usual rate per mile which the first and second party agree to pay. The intent of this agreement being to secure harmonious action of the parties for the common interest of all. In case of disagreement between the parties, the question in dispute shall be settled by arbitration. The party desiring arbitration shall give twenty days notice to the other parties hereto, and within that time one arbitrator to be chosen by the first and second parties, and one by the third, and the two so chosen shall select a third if they cannot agree, and the decision of the majority shall be binding upon all the parties.

And "Exhibit E" is a contract in all respects like the

one just outlined, executed on the same day, except that the third party is the Monon Block Coal Company, and its provisions relate to the opening and development of coal mines on lands owned by said third party and the shipment of such coal instead of stone.

The fourth paragraph is in no essential particular so different from the first and third as that a ruling on their sufficiency will not be decisive of the sufficiency of the fourth.

"The rule is well established that when a contract is reduced to writing, the legal presumption is that the entire contract, as finally settled, is embraced therein, and all oral negotiations or stipulations between the parties which preceded or accompanied the execution thereof are to be regarded as merged in it, and it is to be treated as the exclusive medium of ascertaining the contract by which the parties bound themselves." *Rhoads* v. *Jones,* 92 Ind. 328.

"When a contract has been finally committed to writing, all prior negotiations and stipulations between the parties are merged in the writing, and to that alone can the court refer to determine the rights and obligations of the parties." *Burton, Rec.,* v. *Morrow,* 133 Ind. 221. See to the same effect *Brown* v. *Nichols,* 123 Ind. 492; *Brown* v. *Russell & Co.,* 105 Ind. 46; *Ice* v. *Ball,* 102 Ind. 42; *Trentman* v. *Fletcher,* 100 Ind. 105; *Carr, Admr.,* v. *Hays,* 110 Ind. 408.

Greenleaf says: "When parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, was reduced to writing; and all oral testimony of a previous *colloquium* between the parties, or of conver-

Reynolds *et al. v.* Louisville, New Albany and Chicago Ry. Co. *et al.*

sation or declarations at the time when it was completed or afterwards, as it would tend, in many instances, to substitute a new and different contract for the one which was really agreed upon, to the prejudice, possibly, of one of the parties, is rejected.    In other words, as the rule is now more briefly expressed, 'parol contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument.'"    Vol. 1, section 275.

In an Indiana case it is said: "It is a well-settled principle that none will controvert, that a written contract connot be contradicted or altered by parol evidence.    But it is sought in this case to avoid this well-settled doctrine by alleging that the parol agreement sought to be proven in this case was an independent contract, which constituted the basis of, and consideration for, the written contract, and that it does not vary or change the written contract."

But the court, after a full review of the cases, says:

"There would be no purpose or benefit in stating in the written contract what either party was to do,    *    *    * as all that would be necessary to avoid the effect of such a written contract would be to aver, as an additional consideration for the use of the land, or for the farming of the land, that it was verbally agreed at the time that certain other things were to be done, performed or paid.    In this case the verbal contract alleged is in relation to the very subject matter of the contracts.    *    *    * The contract sued upon appears to be complete in itself. There is nothing to indicate that it is collateral to or dependent upon any other contract, either oral or written, and in the absence of fraud or mistake, it must be conclusively presumed that it contains the whole agreement of the parties and the manner and extent of their undertaking, and it cannot be affected, altered or

changed by any precedent or contemporaneous parol agreement." *Diven* v. *Johnson*, 117 Ind. 512 (3 L. R. A. 308).

"The writing takes up and retains the whole and every part of the contract, leaving nothing to be supplied by extrinsic evidence." *Conant* v. *Nat'l State Bank of Terre Haute*, 121 Ind. 323.

But it is urged in appellants' brief, that this rule does not apply, because they say "The verbal agreements set forth do not vary the writings or their legal effect, but simply provide for something beyond their scope, and yet consistent with them; therefore, it will not. do for the court to be misled by the general rule as to the inadmissibility of parol evidence to vary or contradict."

The only Indiana case cited by counsel in support of this contention is *Hays* v. *Peck*, 107 Ind. 389. In that case it appeared that the consideration of a deed was stated in general terms. This court held that in such a case the party might, by parol proof, show the actual consideration, saying: "With few exceptions, the rule is that the preliminary negotiations are merged in the deed."

And in that case it is also asserted as the law that where the deed specifically sets forth the consideration, parol evidence of consideration is not admissible, but only where the consideration is merely stated in general terms will the doctrine permitting oral evidence apply.

That rule can have no force in the case at bar, because the considerations on both sides are fully and specifically stated. The rule applicable and controlling here is stated and applied in a later case (117 Ind., *supra*):

"We are aware that some of our decisions, in considering particular cases, have gone a good ways in the admission of parol evidence on the theory that it is

admissible in such cases to show the consideration of the contract in question; and possibly, carried to their legitimate extent, they would support the theory of counsel for the appellee, and the ruling of the court below in this case; but we are rather inclined to limit than extend the doctrine as laid down and applied in the case of *Welz* v. *Rhodius*, 87 Ind. 1, and to adhere to the older as well as the more recent cases which we have referred to in support of this opinion."

The contract to lease required the Fort Wayne to construct and complete a railroad and put appellee in possession, and provided that, before that is done, the New Albany should not be liable for the payment of any rents whatever; that when that is done the New Albany should pay rentals equal to the interest, etc., to the trustee of the bondholders. Appellants, without alleging that these provisions were written into this contract by mistake or fraud, aver, and, by their complaint assert, their right to prove by parol evidence that these rentals were not to be so used, but were to be applied upon appellants' construction contract, and at the same time leaving the contract for lease in full force and effect as between the New Albany and the trustee, thus seeking by parol evidence to impose upon the New Albany an unwritten, new burden, namely, to pay for the construction of the road in addition to the payment of the agreed rent when the road is completed and accepted.

The rule is fundamental that no written liability can be enlarged by parol evidence of any talk or understanding had or expressed prior to the execution of the written contract.

The intention of the parties must be gathered from the language of the contracts to which they are respectively parties.

If it were the intention of the parties that the New Albany should contribute toward the construction of the road, and that appellants were to have the benefit of such contribution, no words were written in the contract giving expression to such intention, and such intention, therefore, cannot now be proven by parol evidence.

If the appellants intended to rely in any manner, matter, or thing, upon the credit of or aid from the New Albany in their construction and completion of the road and in their payment therefor, they should have joined with the New Albany in a contract providing therefor or expressing the same.   It is a universal rule, without a single exception, that courts enforce contracts, but do not make them.   No contractual relation not existing by contract can be created by judgment or decree.

In *Baltzer* v. *Raleigh, etc., R. R. Co.*, 115 U. S. Rep. 634, the plaintiffs attempted to achieve the legal feat here proposed by appellant, namely, to have the liability of the railroad company extended from a contract to which it was a party, to a construction or material contract to which it was not a party.   And thereon the Supreme Court of the United States, in that case, held :

''As, therefore, the contract expressed the agreement of the parties, no court has power to change it.   Courts of equity may compel parties to execute their agreements, but have no power to make agreements for them. * * * The evidence which was offered of the understanding between Baltzer and Pickrell, that the covenants of Pickrell were the covenants of the railroad company was inadmissible, first, because it is a general rule that when a contract has been reduced to the form of a document or series of documents, no evidence can be given of the terms of such contract, except the document itself ; and, second, the railroad company

could not be bound by the understanding of other persons to which it was not a party."

So in the case at bar, assuming that the contract to lease had been executed by the New Albany before appellants executed their construction contract, and that appellants executed the same upon the faith of the performance of the contract to lease by the New Albany, and but for the existence of the contract to lease, appellants would not have entered into their construction contract, such fact, not being found in any of the written documents or contracts between the respective parties, could not be established by parol evidence.

The fact that A enters into a contract with B, and that B's ability to perform his part depends upon performance of a certain contract by C with B, gives A no claim whatever against C for breach of C's contract.

There is no right of action shown in the appellant under any of the contracts against the appellee, the Louisville, etc., Co., because the right of action, if any were shown, is alleged in the complaint to have been assigned as collateral security to Porter Skinner. *Board, etc.,* v. *Jameson,* 86 Ind. 154; *Smith* v. *Felton,* 85 Ind. 223; *Felton* v. *Smith,* 84 Ind. 485.

"The assignee need not be the legal owner of the thing in action; if the legal owner, he must of course bring the action; but, if the assignee's right or ownership is for any reason or in any manner equitable, he is still the proper plaintiff, in most of the States the only plaintiff." Pomeroy Rem., section 127.

The pleading shows not a conditional assignment of this contract, but an absolute one. It was "heretofore assigned to one Porter Skinner to secure and indemnify him."

There is no pretense that Skinner has been absolved from his liability on $80,000 of the notes which he

endorsed for appellants. If, therefore, the assignors, after executing an absolute assignment of the contract and before the purposes of its execution have been sat-isfied, can say to the assignee : "You must go into this forum at this time and 'institute an action such as this' or 'we will proceed in our own right,'" then the proffered indemnity is worthless, and an assignment can be canceled at any moment by the mere will of the assignor. It is because the assignee of such right may, without let or hindrance from the assignor, receive and appropriate the money that may be collected to his own use that makes it valuable to him. So far as appears, Skinner's right to bring suit may not have matured when the assignors notified him to "institute an action such as this." The notes endorsed may not have become due, to indemnify against the payment of which this contract was assigned. This contract in suit was no longer appellants'. Whatever there was of value in it was transferred to Skinner. Notice to bring suit could not reinvest appellants with the right they had assigned. Assignments of valuable rights are not dependent on the whims or caprices of the assignor. Appellee could not make payments to appellants in the face of such an assignment and knowledge thereof. These would have to be made to Skinner. *Board, etc.,* v. *Jameson, supra*; *Pixley* v. *Van Nostern,* 100 Ind. 34; *Smock* v. *Brush,* 62 Ind. 156; *Rawlings* v. *Fuller,* 31 Ind. 255.

The next proposition that there are no contract rela-tions which appellants can enforce against appellee, is sought to be avoided by averment that different con-tracts between different parties, relating to different matters "form parts of one and the same transaction." This is what appellants' counsel say they may do by oral evidence on the theory that this is "consistent"

with the written contracts and does not "vary or contradict" them.

"The recitals of an instrument properly set forth as an exhibit not only aid the statements made in the body of the pleadings, but in case of inconsistency between the allegations contained in the pleadings and the recitals of the exhibit, the latter will control." *Bayless* v. *Glenn,* 72 Ind. 5.

"Where a written instrument is the foundation of a pleading and is made an exhibit, its statements will control the allegations of the pleading." *Avery* v. *Dougherty*, 102 Ind. 443; *Hines* v. *Driver*, 100 Ind. 315.

But it is manifest that these contracts upon their face and-by their express terms do not "form a part of one and the same transaction." One contract between appellants and the Fort Wayne Company has for the basis of the transaction the building of a railroad, and the terms and kind of payment. The other, between the Fort Wayne Company and appellee, has for its basis the leasing of a railroad, amount of rental, etc. If, therefore, building a railroad is an essential part of the transaction to lease a railroad, and this unity is created by the written contracts themselves, then how will the court arrange the parties thereto? Will appellants' agreement to build at their own expense still run to the Fort Wayne Company, as provided? Will the promise of the Fort Wayne Company to pay in its bonds and stock still stand as provided, or will this become the obligation of appellee? Will the Fort Wayne Company be held on its promise to lease and deliver over a completed railroad, or will this stand for the promise of appellants? Will the court substitute appellants in the place of the Fort Wayne Company and require them to hold appellee harmless from all construction debts?

These and many more questions of like character only serve to show the unsoundness of appellants' assertion that these three contracts, avowedly between different parties, dealing with different questions made at different times, introducing different conditions wholly foreign to each other, can be brought into one contract without any agreement by the parties to that effect, under the sweeping declaration of the pleader that they "form part of one and the same transaction."

In *Comer* v. *Himes*, 49 Ind. 482, an agreement was sued on which created an obligation to convey a "life estate." It was averred in the complaint that plaintiff was entitled to the land in "fee simple," and "that a written instrument designed to carry out this agreement was made and duly executed," and a copy was filed with the complaint. The court there said: "There is here no allegation of any mistake in framing the instrument. * * It is simply alleged that one estate was agreed for, and another accepted. Courts correct mistakes in instruments, under proper circumstances, but do not relieve parties from positions in which they have placed themselves by their own consent, where there has been neither fraud nor mistake."

*Baltzer* v. *Raleigh, etc., R. R. Co.*, 115 U. S., *supra*, is directly in point. In that case the Chatham Railroad Company was authorized to build a railroad, and the State of North Carolina authorized the State treasurer to issue bonds of the State in aid thereof. The bonds were issued and secured by a like amount of railroad bonds, and were together deposited with the State treasurer. Pickrell, of New York, entered into a construction contract to do all the work and furnish all material, including the iron rails, and was to take the State bonds in payment. A man by the name of Whitford

was associated with Pickrell.    They entered into a contract with parties for the purchase of the iron.    In the first draft of the iron contract, Pickrell and Whitford were parties of the second part.    This draft was sent to the president of the railroad company and was returned with some changes, and the name of Whitford was stricken from it, because he declined to sign it as a party.    From this draft the final contract was executed between Schepeler & Co., first party, and John F. Pickrell, second party.    By this it was agreed to sell Pickrell iron rails, to be paid for in bonds of the State, which the railroad company agreed to turn over to Pickrell for the construction of the road.    Pickrell had a contract for construction, and the railroad company's obligation to pay him in State bonds, and the iron company had agreed with Pickrell to furnish the iron, and had his agreement to pay in State bonds.    On the same day Hawkins signed a paper agreeing for the railroad company that certain of these bonds should remain on deposit subject to the joint order of the parties to the iron rail contract, and signed this paper "W. J. Hawkins, president of the Chatham Railroad Company."    These bonds so held subject to joint order were for the purpose of providing payment for the rails and as security for performance of the contract.    After a portion of the iron rails had been delivered to Pickrell, the railroad company became financially embarrassed, and thereupon the contract between Pickrell and the railroad company was changed, cutting down the length of the road Pickrell was to build, but requiring him to furnish the rails for this shorter distance.    The company paid him in full for the rails and for construction. This resulted in a breach of Pickrell's contract with the iron company, and left a balance due the iron company thereunder.    Their suit was against the Chatham Rail-

road Company and others. In this suit it was prayed that the railroad company be substituted in the place of Pickrell, who was alleged to be the agent of the railroad company ; that the contract was for the benefit of the railroad company, and, when so reformed, that the contract might be enforced against the railroad company. Pickrell failed to answer and a decree *pro confesso* was taken against him. The railroad company denied that Pickrell was its agent, and denied his authority to make a contract in behalf of the railroad company ; that the paper signed by Hawkins was to enable Pickrell to carry out his contract with the iron company previously made with them, and with no purpose to become a party to the contract for iron, or be bound thereby.

The court there said :

"It is plain that the relief prayed for by plaintiffs in their bill of complaint cannot be granted unless they establish the fact that the Chatham Railroad Company contracted with them for the purchase of iron rails, and that the rails were delivered by them to the railroad company, and have not been paid for.

"The agreements set out in the record do not show upon their face any contract by which the railroad company agreed to purchase iron rails of the plaintiffs. The plaintiffs, however, insist that taking contracts 'A' [contract between railroad company and Pickrell] and 'B' [paper signed by Hawkins, president] together and construing them as one contract, an agreement of the railroad company to buy ten thousand tons of iron from the plaintiffs can be made out. We think otherwise. If both contracts had been written on the same sheet of paper and executed at the same time, that fact would not have changed the obligations which the parties assumed. Reading both

contracts, it appears that the plaintiffs, the parties of the first part, sold and agreed to deliver to Pickrell ten thousand tons of iron rails. Pickrell agreed to receive the rails and pay. for them at a certain price in bonds of the State of North Carolina, and Hawkins, as agent of the Chatham Railroad Company, agreed to join with the other parties in an order for the withdrawal of the bonds from their place of deposit, to be handed over to Pickrell, and by him handed over to the plaintiffs. In this manner the debt of the company to Pickrell, and the debt cf Pickrell to the plaintiffs for the iron, would be paid. There is nothing in either of the two contracts, considered separately or as one, which discloses any contract between the plaintiffs and the railroad company for the sale and purchase of iron. On the contrary, contract 'A' is a contract for the sale and purchase of iron, to which the plaintiffs and Schepeler & Co., on one part, and Pickrell, on the other, were the only parties, and Exhibit 'B' opens with a recital of the fact that by contract 'A' the plaintiffs and Schepeler & Co. had agreed to sell and deliver to Pickrell ten thousand tons of iron rails. The railroad company was not mentioned in contract 'A,' and all that it agreed to do by contract 'B' was to unite in an order for the bonds. But the plaintiffs contend that the two contracts are to be so read that Pickrell, who according to contract 'A' agreed to buy and pay for ten thousand tons of iron, is not to buy the iron or pay for it, or do anything which the contract requires him to do, but that the railroad company which is not named as a party to it at all, is to do everything which the contract requires of Pickrell.

"On the theory that the two contracts were one con-

tract, to which the railroad company and not Pickrell was a party, the inquiry is pertinent, what was the necessity of its execution by Pickrell at all, when it was signed by Hawkins, the president of the company, and why should the railroad company, having two agents fully authorized to make the entire contract, execute one part of it by one agent, and the other part by the other?

"In the light of the surrounding circumstances, the meaning of the two contracts is plain and is not open to construction, especially to a construction which relieves one party of all obligations assumed by him and puts them upon another, who had not assumed them at all. Pickrell, having made a contract with the railroad company to construct its road and to furnish the iron therefor, and to take his pay in North Carolina State bonds, makes another with the plaintiffs for the iron and agrees to pay for it with the same class of bonds which he was to receive from the railroad company. * * * It is plain, therefore, that as they stand, the contracts mean, what their language imports, that Pickrell contracted with the plaintiffs for the purchase of the iron, and the railroad company did not.

"But the plaintiffs contend that contract 'A' should be reformed by substituting therein the name of the defendant railroad company, the real party of the second part, for the name of John F. Pickrell, and, being thus reformed, that they are entitled to the further relief prayed in their bill.

"To entitle the plaintiffs to this relief, they must show that the name of Pickrell, as the party of the second part, was inserted, and the name of the railroad company left out of the contract, by mistake or fraud. In such a case it is well settled that equity would reform the contract and enforce it, as reformed, if the mis-

take or fraud were shown.    *    **    But the mistake must be clearly shown.  If the proofs are doubtful and unsatisfactory, and if the mistake is not made entirely plain, equity will withhold relief.    *    *    * Even without the application of this strict rule the case of plaintiffs fails.

"In the first place, there is no averment in the bill that the name of Pickrell was inserted in the contract by mistake or fraud for that of the railroad company, and, as far as the record shows, the plaintiffs never asserted in any way that such was the case until after the bringing of this suit *    *    *    *    *    *    *.

"It is necessary, in order to sustain their contention that the name of Pickrell was inserted in the contract when that of the railroad company should have been, for the plaintiffs to show that Pickrell was the agent of the railroad company, authorized by it to make the contract, and that he used his own name in the contract instead of that of the principal.    *    *    * Courts of equity may compel parties to execute their agreements, but have no power to make agreements for them.  [Authorities cited.]

"The evidence which was offered of the *understanding*    *    * that the covenants of Pickrell were the covenants of the railroad company were *inadmissible,* first, because it is a general rule that when a contract has been reduced to the form of a document or series of documents, no evidence can be given of *the terms* of such contract, except the document itself; and, second, the railroad company could not be bound by the understanding of other persons, to which it was not a party."

This is not a case wherein, upon consideration had, the promise to pay to a designated third party or a

whole class, will be construed for the benefit of such person or parties.

It is insisted that by some supposed contingent, indirect, and disconnected interest which appellants have in the contracts made by appellee with third parties, and to which appellants are not parties, and to whom reference therein is not even made, nevertheless "a good cause of action is stated upon the theory that a third person may maintain an action upon a contract under which he was a beneficiary."

That is to say, without privity of contract with appellee, without its consent, without agreement, without consideration from appellants, the court will in some form say, because appellee entered into contractual relations with the owners of the railroad and as its tenant, and upon completion and possession was to pay an amount as rental equal to the interest on some bonds which the owner had agreed to issue and deliver to appellants for construction, that thereby appellants became benefited in a legal sense, and can therefore assert as contractors in this form of action a legal demand against appellee for unearned rents which it agreed to pay to another when earned.

"But it is not every promise made by one to another, from the performance of which a benefit may ensue to a third, which gives a right of action to such third person, he being neither privy to the contract nor the consideration. The contract must be made for his benefit as its object, and he must be the party intended to be benefited." *Simson* v. *Brown*, 68 N. Y. 355.

On December 3d when the contract for construction was closed and executed by appellants and the Fort Wayne, the contract to lease between the Fort Wayne and New Albany had not been executed; therefore, when the contract to lease was formally executed by the

Fort Wayne and New Albany it contained no promises whatever running to appellants (on the contrary construction debts were expressly excluded from its benefits), and the construction contract contained no promise whatever running to the New Albany, so that in point of fact there were no reciprocal promises, obligations or liabilities between the appellants and the New Albany, and in point of law no reciprocal promises between the appellants and the New Albany subsisted at the date of the execution of the construction contract or by the obligations of its terms, or at any other time or in any form, without which no liability could accrue in any form by reason of the contract to lease in favor of appellants against the New Albany. *Keep* v. *Goodrich*, 12 Johns. 400.

To the same effect, see *Savings Bank* v. *Ward*, 100 U. S. 195 (202).

It is not denied that a third person, for whose declared benefit a contract was made, may sue to enforce the same. But it is only those whom the contract expressly declares are the beneficiaries and real parties in interest as when the obligation runs to and is for the benefit of a designated third person or a class. In such cases the promisee is taken to be the mere agent or trustee of the designated actual beneficiary. This doctrine is without any sort of application to the facts of this case; for here the third parties (appellants) are not only not referred to in the remotest degree by any contract executed by appellee, but the construction contract and debt are expressly excluded from all claims or any benefits whatever. It is strictly a promise to pay to a trustee, conditioned upon the "mutual and dependent obligations" of the immediate parties thereto. It is not contemplated by the immediate parties to the contract in suit that anything shall be paid except upon

the performance of future obligations. That appellants may, therefore, have a right of action because they may anticipate some benefit from a contingent promise made to their promisor by another, has no support under the cases cited by appellants.

It will involve unnecessary labor to review the thirty odd cases cited by appellants' counsel. Notice of a few will suffice to show that they are without application.

In *Rhodes* v. *Matthews*, 67 Ind. 131, appellants agreed with the president of the rolling mill company upon a sufficient consideration to furnish the means to operate the mill, including the payment of the operatives engaged in the mill; that this money was furnished for that purpose; that the operatives were informed of this arrangement, and acted upon it in rendering their services to the mill; that the appellants knew that the operatives were acting upon the faith of this contract, and accordingly were performing the service. The appellees, Matthews and others, brought their suit and recovered judgment against the appellants, and the court sustained it on the ground that there was an implied contract arising in favor of them and against appellants, to pay for the work when rendered.

In *Medsker* v. *Richardson*, 72 Ind. 323, Richardson, appellee, sued appellant, Medsker, for work and labor at his instance and request. The facts were that appellee went into appellant's family when a little girl without making any contract as to compensation other than had been made for her when he took her. She was not treated as a member of his family. The only question involved was whether the law would imply a promise to pay. The court says: "It may be fairly inferred * * that, when appellee became a member of appellant's family, she did so pursuant to an express contract made

by appellant with some one in her behalf, for her compensation, and that, under such express contract, she continued to live in appellant's family   *   *   *   . This contract made by appellant with some one in her behalf for her compensation, would enure to the benefit of the appellee   *   *  , and she   *   *   *   using such contract either as a cause of action, or as matter of evidence in a common count for work and labor done."

In *Stevens* v. *Flannagan,* 131 Ind. 122, appellant Stevens had entered into a written contract with his father, by which the father agreed, in consideration of $14,000, to sell and convey to his son certain real estate. Appellant, the son, agreed to pay the stipulated consideration as follows:   $5,000.00 to the heirs at law of the father, William Stevens, one year after his decease, and $2,200.00 annually thereafter to said heirs.   The suit was ·brought by certain of the children of William Stevens upon this contract with his son, appellant, to collect the portion of the purchase-money due, and to have a vendor's lien enforced against the land.   There was nothing left to be done under this contract except payment by appellant.   The appellant held the title to the land conveyed by his father.   "The appellant thereby obtained the full consideration for his promise to pay the purchase-money.   It was competent for them to agree upon any person to whom the purchase-money should be paid.   So far as the rights of the appellees are concerned, there can be no material difference between their rights under this contract and their rights as they would have been if, instead of evidencing the agreement to pay by the written contract, Sampson R. Stevens had executed his notes for the several sums due the several parties direct to them."

These are the only cases from which appellants quote

in their brief, therefore it is fair to assume they chiefly rely upon them for support.

Those cases lend no support to appellants' contention. In the one case there was an agreement resting upon a valid consideration "to pay the operatives engaged in the mill," and they "acted upon it." There, clearly, an implied promise arose. In another case, the girl actually performed the work and labor, under a contract made by others on her behalf, for the party whom she sued for its value. He received the benefit of that work and labor; while in the case at bar the work was not done for appellee, no one made a contract in appellee's behalf, and it received neither title, lien, nor benefit from it, unless it can be said that ten miles of railroad, twenty miles distant from appellee's railroad, owned by the Fort Wayne Company, can by some power in the court, be converted into a vested right or benefit to appellee. In the last case, the party received absolute title to his land and agreed to pay part of the purchase-price to another. It is viewed as if the purchaser had executed his promissory note to the plaintiff in that case.

In *Chicago, etc., R. W. Co.* v. *Derkes*, 103 Ind., page 520, appellees signed a bond, running to appellants, reciting that in consideration of benefits which would accrue to them by the location and construction of the railroad through their county and town, binding themselves in a sum sufficient to pay for the right of way across the county. The suit was brought by appellants against appellees to recover the amount expended for such right of way, averring that the railroad was located and constructed as agreed. Appellants were defeated by the judgment of the lower court on the ground of the want of mutuality in the contract or bond sued on. This question was presented on appeal.

Reynolds *et al. v.* Louisville, New Albany and Chicago Ry. Co. *et al.*

The Court held:

"The first of these objections to the contract or bond sued upon, namely, the want of mutuality therein, is certainly not well taken * * *. Such contract, * * after its delivery by the appellees, was accepted by the appellant, and the affirmative acts on its part, called for and constituting the consideration of such contract, * * were fully done, kept and performed by appellant, the appellees cannot be heard to claim there is any want of mutuality in the instrument."

In that case the contract was made directly by the citizens with the railroad company. The stipulated consideration was paid by the railroad company to the citizens. The contract when sued had been fully performed on its faith in the citizens' express promise to pay. In this case the contract of appellants had not been performed. Appellee has received no part of what it had contracted with the Fort Wayne company to receive, namely, the occupancy and use of a completed railroad. The work which appellants performed was wholly done under a contract with parties *other* than appellee and for the benefit of such other party, and the promise to pay therefor was the sole obligation of such other promisor. No title, right or benefit was or has been received.

What is the particular promise or covenant in these agreements of which appellee could demand enforcement against appellants? Certainly not to build and complete the railroad, for appellants never promised appellee to do this. Suppose that, after commencing the work of construction, appellants had voluntarily refused to go further with it, could appellee enforce specific performance against them? Their answer that they never promised to build any road for appellee would be conclusive. Could appellee recover damages against appel-

lants for such failure and refusal to finish the road? Appellants would answer such suit by appellee, "We had no contract with you to build and complete the road, and you have no interest in any road we have agreed to build, except the contingent one resulting from your contract with the owners of it for its use when completed, to which contract for such use we are not parties." Such answer would be conclusive, because these contracts do not recite a single promise running from one to the other. The only promises made by appellee run to another party, who has not and is in no position to complain, because the performance of these were, by express terms, made dependent upon the fulfilment of their promises, which were absolutely abandoned, it is said, because without money or credit to carry them out.

Chancellor Johnson, in *Duvall* v. *Myers*, 2 Md. Ch. 401 (405), states the rule, "that a party not bound by the agreement itself has no right to call upon the judicial authority to enforce performance against the other contracting party, by expressing his willingness * * to perform his part of the agreement. His right to the aid of this court does not depend upon his subsequent offer to perform the contract upon his part, when events may have rendered it advantageous to do so, but upon its originally obligatory character."

If, therefore, between the actual parties to the contract—the Fort Wayne Company and appellee—there could be no enforcement of any obligation contained in that contract against appellee, for the reason that its obligations were not to "become operative" until "that contingency happened," namely, the completion of the railroad and possession, then what is the position of an entire stranger to that contract whose existence is not recognized by the slightest reference thereto?

Appellee makes the following points in conclusion which we think must be sustained:

1. Appellants as contractors agreed with the Fort Wayne to build for it, to complete and pay for the road, and take as full pay its stock and bonds. Upon the completion and payment by appellants of each six miles of road, they were entitled to their full compensation therefor in bonds; and the moment the bonds were issued therefor and delivered to appellants, so much of the construction contract was fully performed by both parties thereto, and to that extent extinguished.

2. Appellants' breach of their construction contract would give no right of action against them in favor of the New Albany, because the New Albany is a total stranger to such contract. If the New Albany could not recover against appellants for a breach of their contract, because it was not a party thereto, then they cannot recover against the New Albany for a breach of their contract to which appellants are not parties. Without mutual obligation there can be no actionable breach.

3. The New Albany contracted with the Fort Wayne for a lease of its road, the lease and payment of rentals to begin when the road was fully completed and the New Albany placed in possession thereof by the Fort Wayne. The Fort Wayne, and not appellants, agreed in this contract with the New Albany to construct and complete the road.

4. After the bonds were delivered to appellants as contractors, the liability of the Fort Wayne to pay the interest maturing thereon and the principal at maturity arose by virtue of the recitals contained in the bonds themselves, and not by virtue of any provision recited in the construction contract, and any action brought by appellants thereon to recover either the interest or

principal would proceed upon the bonds and not upon their construction contract, and they would bring such suit against the Fort Wayne as holders of such bonds, and not as contractors.

5.   Under the contract for lease and the lease, the entire rentals accruing after completion and occupancy of the road were to be paid by the New Albany to the trustee to meet the interest with a sinking fund for the principal of the bonds at maturity.   In this contract appellants as contractors were expressly excluded either as beneficiaries or payees.

6.   The minds of appellants and the New Albany have never met touching the subject-matter of the contracts in exhibit with the complaint.   Between them no contractual relation whatever is shown to have existed, no mutual obligation or liability, without which no right of action could accrue in favor of appellants against the New Albany.

7.   Even though the contracts in exhibit with the complaint were in a single paper signed by appellants, the Fort Wayne and the New Albany, the liabilities would have remained as separate and distinct as they now are, and thereunder appellants could not recover from the New Albany rentals that it agreed to pay to the trustees.

8.   The New Albany has received no money or property belonging to or for appellants; and the contract for lease contains no provision for payment of any debt due or to become due from the Fort Wayne to appellants for and on account of the Fort Wayne, without which appellants cannot maintain suit against the New Albany upon any ground.

9.   The conditions in the construction contract for performance by appellants are strictly limited to the construction, completion, and payment for the road, and

the conditions to be performed by the Fort Wayne were strictly limited to full payment therefor in the issue and delivery of its stock and bonds to appellants as therein provided. The conditions in the contract for lease to be performed by the Fort Wayne were expressly limited to the construction and completion of the road, and thereafter to lease the road to the New Albany and to place the New Albany in possession thereof when completed, and the conditions in the contract for lease, and lease to be performed by the New Albany, were expressly and strictly limited to the payment of rentals to the trustee for the use of this completed road after the New Albany was so put in possession thereof. These conditions cannot be enlarged by judicial construction or by parol evidence and the breach of one of these conditions, to which appellants are not parties, could constitute no ground for a recovery of damages upon another contract arising out of other conditions, to which the New Albany is not a party.

10. Appellants' construction and supplementary contracts with the Fort Wayne were dated December 3d. The New Albany's contract with the Fort Wayne for a lease was dated December 19th. No reference is made in the construction contract to the proposed or subsequently executed contract for a lease. Appellants in their supplementary contract with the Fort Wayne make a clear concession of fifty-five per cent. of the stock they were to receive under their construction contract, and a further concession to subject the specifications to the approval of the officers of the New Albany, which concessions were to be used by the Fort Wayne in its negotiations with the New Albany as an inducement to the New Albany to consummate the contract for a lease, which concessions for that purpose constitute an unequivocal admission and declaration that no

contract for a lease or concluded negotiations therefor then subsisted or had been reached by the New Albany and Fort Wayne.

11. Assuming that the Fort Wayne would have good cause of action against the New Albany for its alleged breach of its contract with the Fort Wayne for a lease, neither the failure nor refusal of the Fort Wayne to sue the New Albany could vest any right of action in appellants as contractors of the Fort Wayne.

12. The construction contract between appellants and the Fort Wayne required appellants "to furnish and pay for the surveys of said line, and also pay for all material and labor in and about the construction of said road according to the surveys," etc. The complaint wholly fails to show that appellants were prevented from performing this condition of their contract with the Fort Wayne by any act of the Fort Wayne or by any breach of its construction contract committed by the Fort Wayne. In full compensation for the performance of this condition of the construction contract by appellants they were to receive the stock and bonds of the Fort Wayne, and it is not averred in the complaint that the Fort Wayne at any time refused to issue and deliver to appellants the bonds pursuant to the construction contract, as each section of six miles of road was constructed, completed and paid for by appellant, without which there was no breach of the contract on the part of the Fort Wayne, and without a breach of such contract by the Fort Wayne the abandonment of work by appellants was voluntary; thus leaving appellants without cause of action against the Fort Wayne, who was a party to the construction contract, and more clearly without remedy against the New Albany, who was not a party to the construction contract.

13. Any act of the New Albany toward the Fort

Wayne, its proposed landlord, would not justify or excuse abandonment by appellants of their construction contract with the Fort Wayne, the New Albany being a total stranger to such construction contract. The notice by the New Albany to the Fort Wayne, that it would not perform its contract of lease could not in fact or in law justify or excuse appellants from the performance of their construction contract with the Fort Wayne Company, because appellants were not parties to such contract for lease.

14.   The refusal of the New Albany to pay the rentals to the trustee before such rentals accrued—before the road was completed, and it was put in possession thereof by the Fort Wayne—could not justify or excuse appellants' abandonment of the construction contract without an express provision in the contract for a lease that the New Albany was to pay rentals before the road was completed and before it was placed in possession thereof, and that such rentals were to pass from the New Albany to appellants to aid or in part payment to them for the construction and completion of the road.

15.   It must be conceded that appellants' consent would not be necessary to a formal rescission or cancellation of the contract to lease.   It is equally true that the New Albany could have no voice in a formal rescission or cancellation of the construction contract by the Fort Wayne and appellants.   It incontestably follows, therefore, that appellants cannot sue the New Albany and recover against it upon a contract to which appellants are not only not parties, but over which they have no power, and the conditions of which they could neither release, modify, nor waive.

16.   If, as appellants' counsel contend, that the New Albany is and should be the real party in the place and stead of the Fort Wayne in the construction contract,

then appellants must, by sufficient averments, show cause for a reformation of the construction contract and the substitution of the New Albany therein for the Fort Wayne to entitle them to this action against the New Albany, and this can only be done by specific averments of facts showing mistake or fraud in the execution of the construction contract.

17. Assuming that the New Albany was the real or an equitable party to the construction contract, the refusal of the New Albany to perform the contract to lease could not be deemed or taken as a breach of the construction contract, because the one is wholly foreign to the other.

18. Appellants are estopped from denying that they contracted exclusively with the Fort Wayne as an incorporated company lawfully organized and existing under the laws of the State of Indiana, and cannot now be heard to say that that company and its incorporation were devised by the New Albany as a cloak and tool, without alleging specific acts of fraud clearly sufficient to warrant the conclusion with other specific averments to show the identity of ownership, namely, that the Fort Wayne was in fact promoted and its controlling subscription for stock and its official organization were in fact identical with and exclusively controlled by the New Albany. Appellants have not taken the hazard of such averments in their complaint.

21. The complaint presents a complete defense to its prayer, namely, that the Fort Wayne has wholly discharged and performed on its part the construction contract in so far as appellants were entitled thereto to the date of appellants' abandonment of the work, and this performance of the Fort Wayne after appellants' abandonment leaves appellants without any claim whatever against the Fort Wayne, because such performance on

Reynolds *et al. v.* Louisville, New Albany and Chicago Ry. Co. *et al.*

the part of the Fort Wayne extends to the full compensation which appellants were entitled to receive under their construction contract.

22. Appellants cannot borrow recitals out of contracts to which they are not parties for the purpose of creating an estoppel against appellee in a suit brought on contracts to which it is not a party. The effect of recitals in a contract is limited to the parties thereto.

23. Appellants, having received from the Fort Wayne their full contract consideration for the road constructed and completed, cannot again recover therefor against appellee upon its contract to lease, under which contract to lease it could only be held liable in any event to pay an annual rental equal to the interest on the bonds to the date of their maturity and at maturity the *principal*.

24. In any view of this case, we think that even if appellants had sustained actionable injury touching matters arising out of their construction contract, and by reason of the alleged breach thereof, they cannot recover therefor, because they aver in their complaint that the same was assigned, together with the construction contract to Porter Skinner, before the commencement of this action.

There is another serious question arising on the demurrer to the several paragraphs of the complaint, and that is whether the complaint shows a right of action in Elisha P. Reynolds, Jr., the executor of the deceased partner, Elisha P. Reynolds, Sr., even if a cause of action is shown in the surviving partners. The firm consisted of Benjamin Reynolds, John H. Reynolds, and Elisha P. Reynolds, Sr. Elisha P. Reynolds, Jr., the executor, was not a member of the firm. Benjamin and John H., the sole surviving part-

ners, are made plaintiffs, along with Elisha P. Reynolds, Jr., executor of the deceased partner, and if there is no right of action in the executor, even though such right is shown by the complaint in the surviving partners, whether the complaint is not bad as to all for failure to show such right in one of the plaintiffs. Before we could reverse the judgment we must decide that question in favor of the appellants, even though we decided all the other questions in their favor. But the question not having been discussed by counsel on either side, we do not decide it.

It follows from what we have said, that the circuit court did not err in sustaining the demurrer to the several paragraphs of the complaint.

The judgment is, therefore, affirmed.

Filed April 2, 1895; petition for rehearing overruled January 30, 1896.

NOTE.—The right of a third party to sue upon a contract made for his benefit is extensively discussed in a note to *Jefferson* v. *Asch* (Minn.), 25 L. R. A. 257.