**McCLURE & O'FARRELL, P.C., Appellant,**

v.

**Patricia A. GRIGSBY, Appellee–Petitioner,**

v.

**Charles E. Grigsby, Respondent.**

No. 29A05–0907–CV–395.

Court of Appeals of Indiana.

Dec. 15, 2009.

Alfred E. McClure, Thomas B. O'Farrell, McClure & O'Farrell, P.C., Westfield, IN, Attorneys for Appellant.

Christopher E. Clark, Beth A. Schenberg, Goodin Abernathy, LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Chief Judge.

Appellant McClure & O'Farrell, P.C. (the Law Firm), appeals the trial court's order awarding attorney fees to appellee Patricia A. Grigsby. The Law Firm argues that the trial court erred by concluding that the Law Firm had acted unreasonably by opposing Patricia's petition for an accounting of the Law Firm's services to her deceased, estranged husband in their divorce proceeding. Finding that the Law Firm did not act unreasonably, we reverse.

## FACTS

This case commenced on April 26, 2007, when Patricia filed a dissolution of marriage petition against her husband, Charles E. Grigsby. Charles hired the Law Firm to represent him in the dissolution proceeding. On June 20, 2007, Charles paid an initial retainer of $1,500 to the Law Firm, and on June 22, 2007, Charles made a second retainer payment of $2,000. Both payments were made via a joint credit card held by Patricia and Charles.

On July 27, 2007, Charles died. When Patricia was sorting through Charles's papers, she found the receipts for the retainer payments. Patricia, and later her attorney, demanded that the Law Firm provide a detailed accounting of its legal services and return any unearned fees. The Law Firm refused Patricia's request to examine its billing records based upon its duty of client confidentiality to Charles, but indicated that if the duty were removed by a court order, it would provide the records, which established that there were no unearned fees to be returned.

On October 12, 2007, Patricia filed—in the divorce court, under the same cause number as the divorce proceeding—a petition for an accounting and a return of any unused retainer, seeking a court order compelling disclosure of the Law Firm's records. In its response, the Law Firm sought protection from Patricia's request because the disclosure of the firm's records could lead to the disclosure of confidential information.

At the April 29, 2008, hearing and in a brief filed with the court, the Law Firm raised four primary arguments in opposition to Patricia's petition: (1) that the divorce court lacked subject matter jurisdiction over the matter following Charles's death; (2) that Patricia lacked standing to request an accounting because she was neither the Law Firm's client nor properly stood in Charles's place as his personal representative; (3) that the trial court had not obtained jurisdiction over the Law Firm, a third party, where there had been no adherence to due process requirements

of interpleading, summons, service, and notice; and (4) that the information sought would lead to the disclosure of confidential information. Its arguments were supported by ample authority.

At the hearing, the trial court permitted Patricia to submit testimony regarding her assessment of the amount of work done by the Law Firm on Charles's behalf but the Law Firm was unable to present evidence of its work because no ruling had yet been made on the issue of the confidentiality of the billing records. Thus, the Law Firm, still believing itself bound by its ethical obligations, was unable to rebut the testimony. On May 5, 2008, Patricia requested attorney fees in the amount of $1,935.

On June 4, 2008, the trial court granted Patricia's petition, directing the Law Firm to

> provide a verified detailed accounting of services rendered, time expended and/or expenses expended.... Such accounting is deemed confidential and shall be filed under seal. Patricia Grigsby's request for return of attorney fees and/or additional attorney's fees is withheld pending accounting and request from counsel for Patricia Grigsby to rule per Order entered.

Appellant's App. p. 3. The trial court made no findings that the Law Firm's arguments were unreasonable or frivolous.

To confirm its ethical obligations, the Law Firm filed a notice of appeal and requested a stay of execution of the trial court's order. The trial court denied the motion for a stay but extended the time in which the Law Firm might submit its accounting so that it might seek a stay directly from this court. The Law Firm requested a stay from this court, which was denied. The Law Firm then timely complied with the trial court's order and, on July 8, 2008, rendered an accounting of its services to Charles, which showed that there were no unearned fees owed. This court eventually dismissed the Law Firm's appeal as moot.

On September 16, 2008, Patricia filed a second request for attorney's fees, asking for a total amount of $3,157.50. Patricia stated that she incurred those fees as a result of the Law Firm's refusal to provide the accounting of services rendered to Charles. Patricia's petition provided no authority—statutory or otherwise—supporting her request for attorney fees. The Law Firm objected to her request because there is no statutory basis for awarding fees against a non-party in a dissolution. No hearing was held and no evidence was taken.

On March 2, 2009, the trial court summarily granted Patricia's request. In its order, the trial court made no findings or conclusions that the Law Firm had acted unreasonably or frivolously in opposing Patricia's original petition, did not provide any basis for the award of fees, and did not indicate that the award was intended to be a sanction.

On March 27, 2009, the Law Firm filed a motion to correct error, arguing that attorney fees were not authorized for the following reasons: (1) the Law Firm was not a party to the divorce proceedings, therefore the divorce statute did not authorize the award; and (2) Patricia could not receive fees under the "American Rule" because no findings had been made that the Law Firm had acted frivolously or unreasonably.

On April 27, 2009, the trial court entered an order affirming its award of attorney fees to Patricia, finding as follows:

> 4.  That the Court notes that [Patricia] requested only a financial accounting for the services rendered by the law firm. The sole purpose of such accounting was to determine how the

retainer fees, which were ultimately paid by [Patricia], were used. [Patricia] did not request any additional information regarding the context of conversations or other documentation that would have been a violation of the attorney-client privilege. In fact, [Patricia] agreed to have the accounting provided only to the Court for in-camera review. The law firm did not cite any case law that would support their position to refuse the giving of an accounting but only cited an ethical rule. The law firm ignored numerous cases that state:

"As a general rule, information regarding a client's attorney fees is not protected by the attorney-client privilege because the payment of fees is not considered a confidential communication between attorney and client." *Hueck v. State*, 590 N.E.2d 581 (Ind. App. 1 Dist.1992).

5.  ... [U]nder the factual situation as presented in this cause, the Court affirms its prior ruling that [Patricia] has standing and the Court retains jurisdiction to permit [Patricia] to request an accounting from the law firm.

6.  That the law firm contends that they are not a party, did not have an agreement to pay such fees, that they should not have fees against them. The actions, though, in this case, were taken only by the law firm in that their client was found deceased on July 27, 2007. The law firm did not provide the Court with any legal authority that supports their contention that they did not have to provide an accounting based on attorney-client privilege or that such records were confidential. Finally, concerning the American Rule, the Court finds that such actions

were unreasonable and therefore, the assessment of such fees and/or sanction is based upon statute.

Appellant's App. p. 10–11. The Law Firm now appeals.

## DISCUSSION AND DECISION

### I.  Standard of Review

As a general rule, "Indiana follows the 'American Rule,' whereby parties are required to pay their own attorney fees absent an agreement between the parties, statutory authority, or other rule to the contrary." *Smyth v. Hester*, 901 N.E.2d 25, 32 (Ind.Ct.App.2009), *trans. denied*. Although the trial court never cited to a statutory basis for its award of attorney fees, we infer from its finding that the Law Firm acted unreasonably that it awarded the fees pursuant to Indiana Code section 34–52–1–1. That statute provides, in relevant part, that the trial court

may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:

(1)  brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;

(2)  continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless, or

(3)  litigated the action in bad faith.

I.C. § 34–52–1–1(b).

Appellate review of an award of attorney fees pursuant to Indiana Code section 34–52–1–1 proceeds in three steps. *Smyth*, 901 N.E.2d at 33. First, we review the trial court's findings of fact under a clearly erroneous standard. We will review only the evidence and reasonable inferences drawn therefrom supporting the trial court's findings and decision, and will reverse on this basis only if we are left

with a definite and firm conviction that a mistake has been made. *Id.*

Second, we review the trial court's legal conclusions de novo. Here, the trial court found that the Law Firm's actions were unreasonable. A claim or defense "is unreasonable if, based on a totality of the circumstances, including the law and facts known at the time of the filing, no reasonable attorney would consider that the claim or defense was worthy of litigation or justified." *Id.* A claim or defense is not unreasonable merely because the party loses on the merits. *Id.*

Finally, the statute " 'vests discretion in the trial court to award fees on finding one or more of the acts described in subsection (b) [of Indiana Code section 34–52–1–1].' " *Id.* (quoting *Mitchell v. Mitchell*, 695 N.E.2d 920, 925 (Ind.1998)). Thus, the third step of our appellate process is to review the trial court's decision to award fees and the amount of those fees under an abuse of discretion standard. *Smyth*, 901 N.E.2d at 33–34.

## II. The Law Firm's Claims

The Law Firm argues that the trial court erred by finding that its actions were unreasonable, thereby entitling Patricia to attorney fees. Inasmuch as there are no disputes of fact herein, we will turn immediately to the second part of the appellate review process and consider whether, as a matter of law, the Law Firm behaved unreasonably by opposing Patricia's request for an accounting. The Law Firm offered four reasons for its opposition, and we will examine each one in turn. We need not decide the merits of these issues; we must merely consider whether, based on a totality of the circumstances, any reasonable attorney would consider that the defense was worthy of litigation or justified.

## A. Lack of Subject Matter Jurisdiction

First, the Law Firm argued that Patricia filed her petition in the wrong court. Rather than filing it with the divorce court, which the Law Firm contended was without subject matter jurisdiction following Charles's death, she should have proceeded in probate and/or small claims court.

In its post-hearing brief, the Law Firm argued that the divorce court lost subject matter jurisdiction after Charles's death, pointing to the following authority in support: " 'It has long been the law in this state that as a general rule the trial court in a divorce action loses jurisdiction over the case upon the death of one of the principals.' " Appellant's App. p. 30 (quoting *Johnson v. Johnson*, 653 N.E.2d 512, 514 (Ind.Ct.App.1995)). The Law Firm went on to explain that the *Johnson* court

acknowledged what it termed three *narrow* exceptions to the rule: (1) a spouse may seek modification of a property settlement following the entry during the life of the two parties of the decree of dissolution based on the deceased spouse's fraudulent underreporting of his assets to the court, (2) the deceased spouse's attorney may recoup from the surviving spouse fees and expenses incurred in preparing the case (the exact opposite of this case) [FN], and (3) the deceased spouse's estate may petition to have child support arrearages reduced to judgment by the dissolution court following the entry of the decree of dissolution. None of those scenarios applies in this case.

FN. [The Law Firm] is entitled to assert its claim against [Patricia] for its fees and expenses incurred in the defense of [Patricia's] motion. However, there is no case law that supports [Patricia's] corollary position that she is entitled to bring her claim for a refund of fees paid to her husband's attorneys.

Appellant's App. p. 30 (emphasis in original). Our review of *Johnson* confirms the

Law Firm's description of the three exceptions to the general rule, and we are inclined to agree that none of those exceptions are clearly applicable herein. We find this to be an entirely plausible position that was supported by authority.

In response, Patricia cited to *Beard v. Beard,* 758 N.E.2d 1019 (Ind.Ct.App.2001), in which a panel of this court interpreted and applied *Johnson.* Whatever the result of the application of *Beard* to the circumstances herein might have been, it is not so obviously contrary to the Law Firm's position that it leads to a conclusion of unreasonableness. Therefore, on this basis, we find that the Law Firm was not unreasonable to oppose Patricia's motion.

### B. Lack of Standing

Next, the Law Firm argued that Patricia lacked standing to file the petition. Specifically, it noted that she did not bring her petition in Charles's name, that she is not his personal representative—in fact, no estate was ever opened—that she is not Charles's only heir, that at the time of Charles's death her interests were adverse to his, and that because she was not the client of the Law Firm, there is no privity of contract. In its post-hearing brief, the Law Firm observed that

> [i]t is long-settled that only a party to a contract or those in privity with him may enforce the contract, and before a third person can acquire a right in a contract between two other parties, he must be a party or the contract must have been entered into for his benefit. *Knight [ & ] Jillson Co. v. Castle,* 172 Ind. 97, 87 N.E. 976 (1909), *Reynolds v. Louisville N.A. & C.R. Co.,* 40 N.E. 410 (Ind.1895), *Indianapolis Natural Gas Co. v. Kibby,* 135 Ind. 357, 35 N.E. 392 (Ind.1893).

Appellant's App. p. 33.

As to Patricia's response that she had standing because Charles made the retainer payments via a jointly owned credit card, the Law Firm disagreed:

> Certainly, had [Charles] remained alive and this court retained its jurisdiction to proceed to a division of marital assets and debts, she would have had standing *as to [Charles],* but [Patricia] has never had standing to bring a claim against [the Law Firm]. To the contrary, she remains in privity of contract only to the credit card issuer, and has obligated herself to pay for the charges to the account. If her argument is to be believed, she could demand repayment for a check-up rendered by a doctor in his office, food eaten at a restaurant, and gas bought at a gas station immediately prior to [Charles's] death, notwithstanding the legitimacy of those charges.... The reality is that rather than properly bringing a claim against [Charles's] estate, which has never been opened, she is attempting to subrogate herself for [Charles]. However, under Indiana law this is not permissible, as obligations under a contract for personal services or involving personal trust or confidence cannot be assigned. *Essex v. Ryan,* 446 N.E.2d 368 (Ind.App.1983) (citing *University Casework Systems v. Bahre,* 172 Ind.App. 624, 362 N.E.2d 155 (1977).

*Id.* at 33–34 (emphasis in original). On appeal, the Law Firm elaborates further:

> When Charles ... used his credit card to pay his legal fees he created a personal obligation from Charles to the credit card company. When Charles died that obligation, if he had not already paid it, became an obligation of his estate. When Patricia paid the card balance on behalf of the estate, she was entitled to reimbursement from the estate, which was not insolvent. Standing to seek an accounting belonged to the personal representative of the estate. But no estate was ever opened and Patricia did not

stand in the shoes of the personal administrator.

Reply Br. p. 4.

In finding that Patricia had standing, the trial court appeared to proceed under Chapter 8 of the Probate Code, concluding that Patricia could make a demand for money without opening an estate on that basis. Ind.Code § 29–1–8–1. Even if we assume for argument's sake that the trial court was correct, the record is devoid of any attempts by Patricia to comply with the requirements of that statute.[1]

We can only conclude that the Law Firm has taken an eminently logical position that is supported by caselaw and statutes. Therefore, under these circumstances, we find that the Law Firm was anything but unreasonable in opposing Patricia's petition on this basis.

### C. Lack of Due Process

■ Additionally, the Law Firm opposed Patricia's petition because it argued that its due process rights had not been observed. Thus, it argued that the trial court "obtained no personal jurisdiction over [the Law Firm]. 'If service of process is inadequate, the trial court does not ac-

quire personal jurisdiction over a party....' *King v. United Leasing*, 765 N.E.2d 1287 (Ind.App.2002)...." Appellant's App. p. 32 (emphasis in original omitted). Specifically, the Law Firm emphasized that

> [Patricia] has made no effort to join [the Law Firm] as a party in this case. Nor is it resolved that a third-party can even be joined in a dissolution, as a divorce proceeding is personal to the parties, and Indiana's dissolution of marriage statutes only authorize a property distribution as to the husband and wife.... [T]his could simply be resolved by [Patricia] walking downstairs to the Clerk's Office and commencing a small claims case, whereby proper summons, notice, and opportunity to be heard could be made.

*Id.* This argument is perhaps the flimsiest offered by the Law Firm, inasmuch as it obviously had notice of the proceedings and was able to participate therein. That said, it is not so beyond the pale that no reasonable attorney would consider that the position was justified. Indeed, the situation as a whole appears to be a novel

---

1. Indiana Code section 29–1–8–1 states, in pertinent part, as follows:

    (a) Forty-five (45) days after the death of a decedent and upon being presented an affidavit that complies with subsection (b), a person:

    (1) indebted to the decedent; or

    (2) having possession of personal property or an instrument evidencing a debt, an obligation, a stock, or a chose in action belonging to the decedent;

    shall make payment of the indebtedness or deliver the personal property or the instrument evidencing a debt, an obligation, a stock, or a chose in action to a person claiming to be entitled to payment or delivery of property of the decedent.

    (b) The affidavit required by subsection (a) must be an affidavit made by or on behalf of the claimant and must state the following:

    (1) That the value of the gross probate estate, wherever located (less liens and encumbrances), does not exceed fifty thousand dollars ($50,000).

    (2) That forty-five (45) days have elapsed since the death of the decedent.

    (3) That no application or petition for the appointment of a personal representative is pending or has been granted in any jurisdiction.

    (4) The name and address of each other person that is entitled to a share of the property and the part of the property to which each person is entitled.

    (5) That the claimant has notified each person identified in the affidavit of the claimant's intention to present an affidavit under this section.

    (6) That the claimant is entitled to payment or delivery of the property on behalf of each person identified in the affidavit.

one, and we do not find that the Law Firm's decision to oppose Patricia's petition on this basis was unreasonable such that attorney fees are warranted.

### D. Protection of Client Confidentiality

Finally, the Law Firm opposed the petition because it feared that by producing its billing records, it would inadvertently breach its ethical duty of confidentiality to Charles. *See Gast v. Hall*, 858 N.E.2d 154, 163 (Ind.Ct.App.2006) (observing that the attorney-client privilege survives even after the death of the client) (cited by the Law Firm in its post-hearing brief).

In ruling against the Law Firm on this issue, the trial court quoted a sentence from *Hueck v. State:* "As a general rule, information regarding a client's attorney fees is not protected by the attorney-client privilege because the payment of fees is not considered a confidential communication between attorney and client." 590 N.E.2d 581, 585 (Ind.Ct.App.1992). What the trial court neglected to do, however, was consider the subsequent paragraph, in which this court explained that, as one might expect, there are exceptions to the general rule:

> courts have developed an exception to the general rule. Identity or fee arrangements may be privileged where revealing the third party's identity or the fee arrangement would be tantamount to the disclosure of a confidential communication.... Whether [the] client's identity or fee arrangement is privileged depends on the facts of each case.

*Id.* (internal citations omitted). Thus, *Hueck* does not provide a bright line rule by which all attorneys can gauge whether the information they hold on behalf of their clients is confidential. If an attorney believes that the revelation of the information—including billing records or a fee agreement—would be tantamount to the disclosure of a confidential communication, then it would behoove the attorney to protect that information until directed to do otherwise by a court.

As argued by the Law Firm in a motion for a protective order, "[a]ny detailed accounting of services performed must necessarily include information that is at the heart of the representation: the reasons for employment, strategy, tactics, communications, etc." Appellant's App. p. 20. The Law Firm believed that to divulge its billing records on Charles's account would be tantamount to breaching the attorney-client privilege. Pursuant to *Hueck*, that was not an unreasonable position to take. Though we need not and do not decide today whether, in fact, the information sought by Patricia was privileged, we certainly do not conclude that the Law Firm's actions were unreasonable in this regard.

Inasmuch as none of the four primary arguments raised by the Law Firm in opposition to Patricia's petition were unreasonable, the trial court erred by ordering the Law Firm to pay Patricia's attorney fees, and the judgment of the trial court is reversed.

BAILEY, J., and ROBB, J., concur.