**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEYS FOR APPELLANT:

**F. JOSEPH JASKOWIAK**
**LAUREN K. KROEGER**
Hoeppner Wagner & Evans, LLP
Merrillville, Indiana

**C. JOSEPH YAST**
Merrillville, Indiana

ATTORNEYS FOR APPELLEE:

**PETER J. RUSTHOVEN**
Barnes & Thornburg, LLP
Indianapolis, Indiana

**BRIAN N. CUSTY**
Merrillville, Indiana



FILED
Apr 01 2013, 9:43 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TRIVEST PARTNERSHIP, L.P., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 45A03-1205-CT-208 |
| | ) | |
| JAMES GAGAN, FRED WITTLINGER, | ) | |
| JACK ALLEN and EUGENE DEUTSCH, | ) | |
| | ) | |
| Appellees-Plaintiffs. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Calvin D. Hawkins, Judge
Cause No. 45D02-0904-CT-90

April 1, 2013

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Trivest Partners L.P. (Trivest), appeals the trial court's denial of its motion for attorney fees against Appellees-Plaintiffs, James Gagan (Gagan), Fred Wittlinger (Wittlinger), Jack Allen (Allen), and Eugene Deutsch (Deutsch) (collectively, the Sellers).

We affirm.

## ISSUE

Trivest raises one issue for our review, which we restate as the following: Whether the trial court abused its discretion by denying its motion for attorney fees.

## FACTS AND PROCEDURAL HISTORY

This is another appeal arising in the wake of the merger of United Consumers Club, Inc. (UCC). *See Gagan v.Yast*, 966 N.E.2d 177 (Ind. Ct. App. 2012). The Sellers are the former shareholders of UCC, a company founded in 1971 and the parent company of DirectBuy, Inc. (DirectBuy). DirectBuy is a multi-million dollar business that franchises membership-based buying centers throughout the United States and Canada. DirectBuy members pay a fee to join and in turn can obtain durable goods from manufacturers at well below retail prices. Gagan founded UCC in 1971 and Deutsch, Wittlinger, and Allen aided in the development of UCC, later becoming its shareholders. However, by 2007, Sellers were no longer involved in the day to day operations of DirectBuy. Instead, its management team consisted of Scott Powell (Powell), Bart Fesperman (Fesperman), and Joseph Yast (Yast)(collectively, the Officers). The Officers

had been involved with DirectBuy in various capacities through the years, eventually rising to management positions within the company.

In 2005, Trivest, a private equity firm specializing in 'founder-based' businesses, contacted the Sellers regarding a possible acquisition. On September 28, 2005, Trivest and the Sellers executed a confidentiality agreement (NDA). Deutsch, on behalf of UCC, signed the NDA. The NDA provided that UCC would disclose certain confidential data to Trivest "for the purpose of enabling [it] to evaluate a possible transaction involving [UCC]." (Appellant's App. p. 45). The NDA contained a two-year non-solicitation clause and was governed by Illinois law. The NDA specifically provided that "[t]his [a]greement shall inure to the benefit of [UCC] and its shareholders." (Appellant's App. 46). The Sellers eventually declined to sell UCC, but kept in touch with Trivest.

In 2007, the Sellers and Trivest restarted acquisition talks. On June 29, 2007, the parties agreed to extend the NDA for an additional two years. Trivest would acquire UCC through a merger of the company with an acquisition holding company owned by Trivest. Sellers' shares in UCC would be canceled in exchange for payment of the purchase price. Rather than performing due diligence prior to the merger, the parties agreed that a merger agreement would be signed first and due diligence conducted thereafter. On August 29, 2007, a merger agreement was executed by the parties and the closing occurred on November 30, 2007.

The merger agreement provided a comprehensive purchase price calculation for the payment of Sellers' shares in UCC (Merger Price). Pursuant to this calculation,

3

Sellers would receive $550 million plus all excess cash in the company as the Merger Price. Calculation of excess cash would be determined by a post-closing Merger Price adjustment with the parties exchanging their separate proposals. After the agreement was executed, but before closing, Sellers declared a dividend of approximately $75 million ostensibly at the behest of Trivest. However, Trivest maintained that the $17 million of the dividend constituted member merchandise money held in the company's accounts to pay for merchandise which DirectBuy held on behalf of its franchisees. While Sellers acknowledged that they were not entitled to this money when it was entered on DirectBuy's books as a "member merchandise deposit," they nonetheless claimed that the $17 million constituted "excess cash" under the merger agreement because of their historical accounting practices. As a result, when Trivest sent Sellers its proposed post-closing Merger Price adjustment, it disputed that the $17 million was "excess cash" under the merger agreement.

After learning that Sellers had taken $17 million of member merchandise money as part of their dividend, the Officers, the three highest-ranking officers in the newly merged UCC, wrote to Sellers. In a letter dated March 20, 2008 and sent to each of the Sellers, the Officers expressed their disappointment with Sellers' decision. The letter described Sellers' actions as a violation of the company's longstanding policy on member merchandise deposits. The letters challenged Sellers' position on accounting for the members' merchandise deposits from one liability account to another made those funds available for shareholder distribution. The Officers alleged that Sellers would have never

4

permitted a franchisee to perform the same practice and that the funds were no longer available to pay for the members' merchandise. Also, the letters pointed out that twenty-six current employees had invested in the company following the merger, and that the missing merchandise deposits would have to be repaid to their detriment. The Officers advised that Sellers' actions would damage the long-standing relationships between them and the Officers.

Although not responding to the letters, Sellers thereafter submitted their post-closing purchase price calculation to Trivest, which it rejected. On June 11, 2008, the matter proceeded to arbitration and Sellers were ordered to repay $5 million of the dividend. However, the arbitrator approved the withdrawal of $17 million in member merchandise money, concluding that it constituted "excess cash" under the merger agreement.

On December 10, 2008, the Sellers filed their Complaint, which was amended on March 4, 2009. Sellers' Amended Complaint alleged that Sellers and Trivest were parties to the NDA, that Trivest breached the NDA by inappropriately disclosing confidential information to the Officers to "put pressure on the [Sellers] to accept [Trivest's] unsupportable calculation [of the post-closing Merger Price adjustment]; and that this disclosure caused emotional harm to Sellers. (Appellant's App. p. 39). On April 24, 2009, Trivest filed a motion to dismiss asserting that Sellers lacked standing to enforce the NDA and failed to allege recoverable damages. On July 31, 2009, the trial court denied Trivest's motion to dismiss. On August 10, 2009, Trivest sought

5

interlocutory appeal, which the trial court certified on September 14, 2009. On December 17, 2009, this court denied Trivest's interlocutory appeal due to untimely filing.

On April 1, 2011, Trivest filed for summary judgment, which was granted by the trial court on May 16, 2011. On June 10, 2011, Sellers filed a Notice of Appeal, but later sought voluntary dismissal, which we granted on October 24, 2011. On June 15, 2011, Trivest filed its petition for attorney fees pursuant to Ind. Code § 34-52-1-1, the General Recovery Rule. On April, 5, 2012, the trial court held a hearing on the motion. On April 6, 2012, the trial court issued its Order denying Trivest's petition, finding that "the plaintiffs in this action did not bring or continue to litigate this action on a claim that is frivolous, unreasonable, or groundless, and did not litigate this action in bad faith." (Appellant's App. p. 31).

Trivest now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. *Standard of Review*

Trivest argues that the trial court abused its discretion by denying its petition for attorney fees pursuant to I.C. § 34-52-1-1. Indiana follows the "American Rule," whereby parties are required to pay their own attorney fees absent an agreement between the parties, statutory authority, or other rule to the contrary. *Neu v. Gibson*, 968 N.E.2d 262, 278 (Ind. Ct. App. 2012), *trans. denied*. The trial court's findings of facts are reviewed under the clearly erroneous standard and legal conclusions regarding whether

6

the litigant's claim was frivolous, unreasonable, or groundless are reviewed *de novo*. *Purcell v. Old Nat'l Bank*, 972 N.E.2d 835, 843 (Ind. 2012). When reviewing an award or denial of attorney fees, we note that the trial court is empowered to exercise its sound discretion, and any successful challenge to its determination must demonstrate an abuse thereof. *Delgado v. Boyles*, 922 N.E.2d 1267, 1270 (Ind. Ct. App. 2010). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id.*

Trivest, as the prevailing party below, sought attorney fees under I.C. § 34-52-1-1. That statute permits the trial court, in any civil action, to award attorney fees "as part of the cost to the prevailing party" if it finds that either party:

> (1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;
> (2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless, or
> (3) litigated the action in bad faith.

I.C. § 34-52-1-1(b).

A statutory award may be made upon a finding of any one of the statutory bases. *Neu*, 968 N.E.2d at 278. A claim or defense is "frivolous" if it is taken primarily for the purpose of harassment, if the attorney is unable to make a good faith and rational argument on the merits of the action, or if the lawyer is unable to support the action taken by a good faith and rational argument for an extension, modification, or reversal of existing law. *Chapo v. Jefferson Cty Plan Comm'n*, 926 N.E.2d 504, 509-10 (Ind. Ct. App. 2010). A claim or defense is "unreasonable" if, based on the totality of the

7

circumstances, including the law and the facts known at the time of filing, no reasonable attorney would consider that the claim or defense was worthy of litigation. *Id*. at 510. A claim or defense is "groundless" if no facts exist which support the legal claim presented by the losing party. *Id*. Bad faith, for the purpose of an award of attorney fees, implies the conscious doing of a wrong because of a dishonest purpose or moral obliquity. *Neu*, 968 N.E.2d at 279.

## II. *Analysis*

On appeal, Trivest raises three principal arguments in support of its assertion that the Sellers brought and litigated a claim that was frivolous, unreasonable, groundless, or brought in bad faith. First, Trivest argues that the Sellers had no right or basis to enforce the NDA. Second, Trivest claims that no breach of the NDA occurred. Third, Trivest contends that a breach of contract claim cannot give rise to an action for emotional damages under Indiana or Illinois law.

## A. *Standing to Enforce the NDA*

Trivest first contends that Sellers' claim was unreasonable and groundless because they had no right to enforce the NDA. Specifically, Trivest argues that Sellers were not parties to the NDA because their shares were cancelled as part of the merger. Further, as a result of the merger, Trivest asserts that the NDA became the property of UCC alone.

We do not agree that Sellers' claim was unreasonable or groundless. A claim or defense is unreasonable if, based on a totality of the circumstances, including the law and facts known at the time of the filing, no reasonable attorney would consider that the claim

or defense was worthy of litigation or justified. *McClure & O'Farrell, P.C. v. Grigsby*, 918 N.E.2d 335, 340 (Ind. Ct. App. 2009). Here, the NDA was governed by Illinois law and signed by the shareholders of UCC, who at the time of execution were only the four Sellers. The NDA "inured to the benefit of UCC and its shareholders." (Appellant's App. p. 46). Accordingly, Sellers claimed contractual standing to enforce the NDA based on their position as the only shareholders prior to the merger. Thus, we do not agree with Trivest that Sellers' claim is so utterly without basis that no reasonable attorney would pursue it.[1]

Further, we do not agree that Sellers' claim was groundless. A claim is groundless when there are no facts to support it. *Purcell*, 953 N.E.2d at 843. Here, Sellers alleged some facts in support of their claim. Whether those facts were sufficient to show standing to enforce the NDA is a question of quality rather than quantity. A claim is not groundless where some facts are alleged yet do not rise to the level of sufficiency to meet the claim. *See id*. In sum, we find no abuse of discretion by the trial court on this ground.

### B. *Breach of the NDA*

Trivest next argues that Sellers' claim was frivolous, unreasonable, groundless, and brought in bad faith because no breach of the NDA occurred. Since the Sellers admitted that the Officers had a right to know information regarding the excess cash

---

[1] We reject Trivest's attempts to cast Sellers's claim as a doomed derivative action simply because of the merger transaction. Here, Sellers sued Trivest only and it is clear that their claim did not seek to redress harm done to UCC. *See Matter of Strutz*, 652 N.E.2d 41, 51 (Ind. 1995).

calculation, Trivest asserts that there was no disclosure of confidential information and therefore no breach of the NDA occurred. As a result, Trivest contends that Sellers' claim was subject to an award of attorney fees.

A frivolous claim, marked by its purpose as a vehicle to harass, is evidenced by an attorney's inability to "make a good faith and rational argument on the merits of the action." *Chapo*, 926 N.E.2d at 509. Here, Sellers argued that confidential information protected by the NDA could only be used to evaluate a transaction concerning acquisition of the company. Sellers relied upon a broad interpretation of the words "evaluation" to include their Merger Price negotiations with Trivest. By alleging that the Officers referenced such information in their March 20 letters and that "Trivest may have effected the disclosure in order to increase pressure on the [Sellers] to accept [Trivest's] unsupportable calculation," Sellers contended that a breach of the NDA occurred. (Appellant's App. p. 39). We conclude that Sellers' argument constitutes a good faith and rational argument on the merits. As a result, the trial court did not err by declining to deem Sellers' claim frivolous.

Furthermore, we cannot conclude that the trial court committed error by declining to find Sellers' claim unreasonable, groundless, or asserted in bad faith. Sellers' action was brought by several lawyers all of whom considered the claim worthy of litigation. Nor can we conclude that Sellers claim is groundless. By alleging facts in support of their claim that a misuse of confidential information occurred, Sellers alleged facts to support their ultimately unsuccessful legal claim. *See Purcell*, 972 N.E.2d at 843.

10

Finally, we do not agree that Sellers' claim constitutes bad faith. Bad faith requires conduct to be "vexatious and oppressive in the extreme." *Neu*, 968 N.E.2d at 278. Where a litigant deceptively withholds material evidence, such conduct is sufficient to overstep "the boundaries of zealous advocacy" and enter "the realm of vexatious litigation." *Id*. at 280-81. Here, Trivest does not accuse the Sellers of concealment. Thus, whatever the soundness of their claim, we cannot conclude that the trial court abused its discretion by concluding that Sellers' litigation did not constitute bad faith.

## C. *Emotional Damages*

Trivest also argues that Sellers' claim for emotional damages shows that their claim was frivolous, unreasonable, and groundless because damages for emotional distress are not permissible in a breach of contract action. Specifically, Trivest asserts that neither Indiana nor Illinois law recognizes emotional damages based on a breach of a sophisticated commercial agreement and Sellers never asserted any mental suffering resulting from the disclosure of confidential information. As a result, Trivest contends that the Sellers all but admitted that their litigation was brought primarily to harass.

The general rule in Indiana is that "emotional distress is not a recoverable damage under a pure breach of contract theory." *Holloway v. Bob Evans Farms, Inc.*, 695 N.E.2d 991, 995 (Ind. Ct. App. 1998). However, Sellers argued that Illinois law recognized emotional distress damages in breach of contract actions. Sellers relied upon *Maere v. Churchill*, 452 N.E.2d 694 (Ill. Ct. App. 1983) in support. In *Maere*, the Illinois Court of Appeals announced the general rule in Illinois that:

11

damages for breach [of contract] will not be given as compensation for mental suffering, except where the breach was wanton or reckless and caused bodily harm, or where the defendant had reason to know, when the contract was made, that its breach would cause mental suffering for reasons other than mere pecuniary loss.

*Id.* at 697. The *Maere* court ruled that the plaintiffs, who alleged that their attorneys' negligence caused them emotional distress, had failed to allege that the breach of contract "was intentional, reckless or wanton" nor did they allege physical injuries resulting from the breach. *Id.*

Here, Sellers were careful to allege the emotional dimension of the merger transaction and the effect the Officers' letters had upon them. Specifically, they alleged that Trivest specialized in acquiring 'founder based' companies. As such, Trivest was not unfamiliar with the significant emotional investment made by the owners of such companies. Next, Sellers produced internal correspondence wherein Trivest gave its approval of the Officers' letters and noted their emotional appeal for the Sellers to repay the excess cash that they had allegedly misappropriated. Though Sellers did not produce evidence of psychological treatment, in Illinois, the "plaintiff need not allege physical symptoms of emotional distress" and "[t]he absence of medical testimony does not preclude recovery for emotional distress." *Thorton v. Garcini*, 928 N.E.2d 8054, 809 (Ill. 2010). Furthermore, Allen testified to the emotional cost the letters had upon him, reciting feelings of hurt and betrayal resulting from the Officers' letters – letters sent by long-time, close business associates who had accused the Sellers of essentially misappropriating funds. Although Sellers' claims were ultimately deemed deficient by

12

the trial court, it is not because their arguments lacked authority, cogent reasoning, and factual allegations. For these reasons, we conclude that the trial court did not abuse its discretion in concluding that Sellers' claim did not rise to the level of a frivolous, unreasonable, or groundless claim.[2]

## CONCLUSION

Based on the foregoing, we conclude that the trial court did not abuse its discretion by denying Trivest's motion for attorney fees.

Affirmed.

BAKER, J. and BARNES, J. concur

---

[2] Trivest also posits that Sellers' claim was frivolous, unreasonable, groundless and brought in bad faith based upon seven additional litigations involving one or more of the Sellers and Trivest or UCC and its affiliates. Two of these involve Gagan's defamation claims against Yast and have been terminated. The remaining claims, however, appear to be based on the Sellers' business relationship with UCC or its affiliates. On this record, and given Sellers' long-standing business relationship with UCC, we cannot conclude that this factor suggests a calculated attempt on behalf of the Sellers to advance a frivolous, unreasonable, groundless, or bad faith claim here.